Mary Mims, Appellee, v. Mutual Benefit Health and Accident Association, Appellant.

Gen. No. 42,440.

Opinion filed May 10, 1943. Rehearing denied May 24, 1943.

Ross, Berchem & Schwantes, of Chicago, for appellant.

MEYER A. GINSBURG, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff, the beneficiary of a life and accident policy issued by defendant, brought suit to recover $1,250, the amount of the policy, for the accidental death of her husband, Doc Mims. There was a jury trial, a verdict and judgment in plaintiff's favor for $1,250 and defendant appeals.

The record discloses that November 2, 1938, defendant issued its health and accident policy to Doc Mims and on that day he paid $10 in advance as a first payment and thereafter agreed to pay $7 quarterly in advance beginning March 1, 1939. The last quarterly premium of $7 was due April 1, 1941 and paid April 7, 1941. This premium paid for the months of April, May and June so that it is agreed the policy was in force and effect on July 1, 1941. The insured, Doc Mims, was accidentally killed July 10, 1941, and the defense interposed was that the policy was not in effect at the time of his death.

| The Quarterly Premiums became due: | The Quarterly Premiums were Paid: |
|---|---|
| March 1, 1939 | March 13, 1939 |
| July 1, 1939 | Receipt not produced |
| October 1, 1939 | October 1, 1939 |
| January 1, 1940 | January 31, 1940 |
| April 1, 1940 | April 15, 1940 |
| July 1, 1940 | July 1, 1940 |
| October 1, 1940 | October 1, 1940 |
| January 1, 1941 | January 13, 1941 |
| April 1, 1941 | April 7, 1941. |

The theory of plaintiff was that the conduct of defendant in accepting a number of the quarterly premiums after they were due, one as late as 30 days after it became due, estopped the defendant company from

claiming that the policy was not in effect on July 10, 1941, the day the insured was accidentally killed. Defendant's theory as above mentioned is that the policy lapsed July 1, 1941, because the $7 premium which was required by the policy for the months of July, August and September, was not paid on or before July 1, 1941. In support of this, counsel for defendant say that one of the standard provisions of the policy, as required by the statute (Ill. Rev. Stat. 1941, ch. 73, par. 969, § 357, subpar. (A) 3 [Jones Ill. Stats. Ann. 66.1032]) provides: "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Association or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained." And that when each quarterly premium of $7 was made, defendant sent the insured an official receipt in which the due date of the premium was given and the date the payment was received. In the first of these printed receipts was the following: "Payment of this premium receipted for, if made on or before the date to which premiums have already been paid, keeps your policy in continuous effect, and if made after that date, reinstates the policy on date of this receipt, as provided in policy, until 12 o'clock noon, standard time, June 1, 1939, at which time another premium will be due." Similar receipts were given when the quarterly premiums of $7 were made, except the dates varied when the premiums were due, the date the payment would carry the policy and the time when the next premium was due.

In support of defendant's contention that the policy was not in force after July 1, 1941, counsel say that when the premium was not paid when due, the liability under the policy ceased on the due date and when payment was afterward made, the policy was reinstated on the date of the payment. Counsel cite, discuss and analyze a number of authorities from this

State and from other jurisdictions. The effect of this argument would be that the policy was not in effect continuously from the date it was issued, November 2, 1938, but that the policy had lapsed from the respective dates when the premiums became due until the payments were made. In this connection· let us examine the facts. The first premium was due March 1, 1939. It was not paid until March 13, 1939, so that for 12 days, under defendant's theory, there would be no coverage. Another premium was due January 1, 1940. It was not paid until January 31, 1940, a period of 30 days not covered; April 1, 1940, another premium was due but it was not paid until April 15—14 days of non-coverage. January 1, 1941, a quarterly premium of $7 was due but was not paid until January 13, a period of 12 days from which there would be no insurance, and the last premium was due April 1, 1941, but was paid April 7, a period of no insurance of at least 5 days. But a consideration of the evidence discloses that the insured was charged for the entire period of time. We think it obvious that defendant ought not to be permitted to contend that when the payments were made after they were due, there was no coverage from the due date until payment, and at the same time, charge the insured for these periods of time.

In *Rashinski v. Travelers Casualty Ins. Co.*, 312 Ill. App. 260, (Abst.) we said: "It is well settled by many cases in this state that where an insurance company induces the insured to believe that payment of the premium may be made after the due date, a forfeiture is barred where the payment is made before the last day of the extended period. *Baxter v. Metropolitan Life Ins. Co.*, 318 Ill. 369; *Stevenson v. Prudential Ins. Co.* 308 Ill. App. 401, 408; *Hooker v. Farmers Mut. Reinsurance Co.*, 304 Ill. App. 230; *Chicago Life Ins. Co. v. Warner*, 80 Ill. 410. In the *Stevenson* case, *supra*, the beneficiary was notified that unless the premium

was paid by a certain date the policy would be forfeited, but the company declared a forfeiture before that date; we held that the beneficiary 'had no way of knowing that the policy would be forfeited before September 16, as the notice stated, nor could she know that the company would contend the policy was forfeited and void for non-payment of the June premium . . .' We quoted from the *Baxter* case: 'Forfeiture of life insurance policies is not favored, and unless the circumstances show a clear intention to claim a forfeiture for non-payment of the premium such forfeiture will not be enforced. If the conduct of the insurer is such as to induce the assured to believe that a forfeiture will not be insisted upon, the insurer will be held to be estopped from taking advantage of such forfeiture . . . ' ''

We think whether it be said that a policy is forfeited for non-payment of premium and that such forfeiture is not favored, is not much different from saying, as do counsel for defendant in the case at bar, that the policy comes to an end when the premium is not paid when due, and that when it is afterward paid, the policy is "reinstated."

In *Benoist v. Business Men's Assur. Co. of America,* 299 Ill. App. 571, where suit was brought on an accident insurance policy which contained a standard provision similar to the one in the policy before us, which provided that if premiums were not paid until after they were due, and when made, the payments should "reinstate" the policy and there had been several premiums paid after they became due, the court held the policy was in force and effect continuously from the date of its issuance. The court there said: "Running over that length of time, and accepting the payments when they were past due without any apparent objection and without any word to the insured looking towards forfeiture, or any steps in that direction, seems to us by consent and agreement and practice to

establish a different system of payment than that provided in the policy. We are, therefore, of the opinion that the defendant waived the payments as provided in the policy and consented to a different system of payment which would estop it from saying now that the policies were not in continuous force.''

A further contention is made that the judgment cannot stand because the provision of the policy requiring plaintiff to file proofs of loss was not complied with— that no proofs of loss were made. This contention is without merit because the evidence shows that the day after the insured was killed an agent of the company said there was no liability under the policy. Afterward on August 1, 1941, the defendant assistant superintendent of claims wrote plaintiff's counsel a letter stating the policy had lapsed July 1, 1941, and ''in view of the lapsation of the policy, favorable action is not possible.'' Defendant having denied liability, it would be a useless ceremony to file proof of loss.

It is also contended that the court erred in admitting evidence over objection of counsel. Plaintiff testified that she paid some of the premiums at the office of the insurance company, 220 S. State street, to Mr. Louis Bromberg; that on July 11, the day following her husband's death, she went to Mr. Bromberg's office and talked to him and that he said he knew Mr. Mims personally and was sorry to learn of his death; that ''I was out there yesterday and also the day before trying to catch him to collect his insurance.'' The objections to these and similar questions were properly overruled. The evidence shows that Mr. Bromberg was the district representative of defendant company in Chicago and that premium payments could be made to him as ''local treasurer.'' He was not called as a witness and the failure to do so is not explained.

Nor is there any merit in the contention that counsel for plaintiff was permitted to make improper argument to the jury where after discussing some of the evidence he said: ''I think the court will instruct you

as to the law—.'' Objection was then made, and the argument is that counsel should not be permitted to tell the jury what the court would instruct them as to the law. It is entirely proper for counsel to say in his argument that he thinks the court will instruct the jury—stating the law which he thinks the court will give.

Objection is also made that the court gave three instructions at plaintiff's request but refused to instruct the jury when requested to do so by defendant. Defendant offered no written instructions but requested the court to instruct the jury orally. Under our statutes (Ill. Rev. Stat. 1941, ch. 110, par. 191, § 67. [Jones Ill. Stats. Ann. 104.067]) the instructions must be in writing unless under a rule of the county court of Cook county the parties and the court agree that the court may instruct orally. Defendant having no written instructions prepared, the court did not err in refusing to instruct orally, nor was there any error in refusing to submit the offered instructions to defendant's attorneys. This is not required.

The first instruction told the jury in effect that although the policy of insurance provided for the payment of quarterly premiums in advance, the time of payment was optional and might be waived by defendant. By the second instruction the jury were told that where an insurance company induces the insured to believe that payments may be made after the due date and that if they believed from a preponderance of the evidence through the course of dealing the insured was led to believe that the policy would not be forfeited, the insurance company would be estopped from taking advantage of failure to pay when due. From what we have above said, these instructions were not erroneous.

The third instruction copied a condition of the policy and said the policy was issued in consideration of statements made by the insured, the payment of $10 by him in advance, and the acceptance by the Associa-

tion of a premium of $7 quarterly beginning March 1, 1939. And continuing, the provision was copied in the instruction "The mailing of notice to the insured at least fifteen days prior to the date they are due shall constitute legal notice of dues." The instruction then continued and told the jury that if they believed from a preponderance of the evidence that notice of the premium due July 1, 1939 was not mailed to the insured at least 15 days prior to that date, their verdict should be for the plaintiff. Objections made to this instruction are that there were other defenses to the suit; that no issue was raised in the pleadings as to the date the notice was mailed, and continuing counsel say: "Only one witness testified as to the date the premium notice was mailed. That witness was C. Truman Redfield, who testified for the defendant that he knew from his knowledge and the custom of the company that all premium notices left the home office [at Omaha] more than fifteen days before the first day of the quarter. Redfield's testimony stands uncontradicted." This statement is not borne out by the record. Mr. Redfield did not testify when the notices were mailed from Omaha. He had been doing business for the company in Chicago for about 11 years with some trips back to Omaha. He did not pretend that he knew anything about the mailing of these notices. He simply testified to the custom. It would have been an easy matter to prove when these notices were mailed. But defendant made no effort in this respect except to have Mr. Redfield testify as to the custom of the company. Moreover Mrs. Mims testified she received the notice July 11, 1941 after she had returned from the inquest and after she had called on Mr. Bromberg.

The judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*

Matchett, P. J., and McSurely, J., concur.