Pearl Spiers, Plaintiff-Appellee, v. Union Life Insurance Company, Defendant-Appellant.

Gen. No. 10,548.

Opinion filed January 8, 1952. Released for publication January 28, 1952.

EMIL DiLORENZO, and JAMES M. BARTLEY, both of Joliet, for appellant.

KRUSEMARK & KRUSEMARK, of Joliet, for appellee; ALBERT H. KRUSEMARK, of Joliet, of counsel.

Mr. PRESIDING JUSTICE DOVE delivered the opinion the court.

This is an action brought by a beneficiary on two insurance policies issued by the defendant. One of the policies is a hospital expense policy and was issued by the defendant to the plaintiff on August 4, 1943.

The other policy, issued September 29, 1948, provides for a monthly payment in case of accidental injury.

In its answer the defendant admitted the execution and delivery of the policies, but denied liability for the reason that the policies were in default for non-payment of the monthly premiums at the time plaintiff sustained the injury for which she claims she is entitled to receive benefits under said policies. In her reply to this defense, the plaintiff takes the position that the defendant is estopped to claim a forfeiture of the policies because of its previous practice and custom in permitting the plaintiff to pay premiums after the due date. Upon a trial before a jury of the issues thus made, a verdict was returned by the jury in favor of the plaintiff in the sum of $1,460 upon which judgment was entered and defendant appeals.

The record discloses that plaintiff sustained a serious injury on May 15, 1949, as a result of an accidental fall. She was taken to the hospital where she remained for some time and from there returned to her home. It is not controverted that if plaintiff is entitled to recover, the judgment is for the correct amount.

The evidence further disclosed that the plaintiff had paid for a number of years the monthly premiums due on her insurance policies by check. Cancelled checks showing payment of premiums for the years 1947 to 1950 were introduced and admitted in evidence, and the plaintiff testified that she always paid the monthly premiums by check. The premiums were due on the first of the month. She testified that on May 1, 1949, she sent to the defendant her check in payment of the premium due May 1st. Her check was in the sum of $11 and represented payments on the two policies here in question as well as the other three policies which she had with defendant and which are not here involved. This check was deposited by defendant on

May 3rd in the bank with which it did business. On May 6, 1949, it was received by the Union National Bank and Trust Company of Joliet, Illinois, the bank upon which it was drawn and the bank on which all of the checks issued by plaintiff in payment of her insurance premiums were drawn. On May 6th, plaintiff's account was overdrawn in the sum of twenty-seven cents. The bank marked the check N. S. F. (not sufficient funds) and returned it to the bank from which it was received, and on May 12, 1949, defendant received the check from the bank in which it had been deposited. On May 19, 1949, the same check was again deposited by defendant in its bank, and on May 23, 1949, it was honored by plaintiff's bank and paid. At the time plaintiff wrote the check on May 1, 1949, her check stub showed that she had a balance in the bank of $38.18. Plaintiff's account remained overdrawn until May 10, 1949. On that date she deposited $30, and thereafter for the balance of the month of May she had sufficient funds in the bank to cover the check in question.

The plaintiff testified that the N. S. F. check was never returned to her until after it was paid; that she did not receive any notice that her check had been dishonored; had no notice concerning it or any notice that her policies had lapsed or had been forfeited, or any demand for payment of the premium after plaintiff's check had been dishonored. A representative of the defendant testified that on May 12, 1949, the N. S. F. check was returned to the plaintiff by mail, together with a copy of a notice received from the defendant's bank, the American National Bank and Trust Company of Chicago, showing that the defendant's account in that bank had been debited in the sum of $11 because of the N. S. F. check.

The defendant, in accordance with its custom, sent plaintiff a notice for the premium due for the month

354

of June 1949, and on May 28, 1949, the plaintiff mailed her check to the defendant in payment of the June premium in accordance with the notice which she had received. When the defendant sent the notice to the plaintiff for the premium due for the month of June 1949, nothing was stated in said notice that the plaintiff's policies had lapsed or had been forfeited. Upon receipt by the defendant on May 3, 1949, of the plaintiff's check dated May 1, 1949, for the premium for the month of May, the defendant issued its customary receipt for this monthly premium. This receipt and other receipts issued by the defendant for the monthly premiums contained this provision: "This receipt is subject to conditions stated on reverse side." On the reverse side appeared the following: "Any check, draft or money order received for the premium herein stated is accepted subject to final payment in cash. If such check, draft or money order should not be honored when presented for payment in due course of business this receipt shall be null and void." The receipts which defendant issued to plaintiff dated June 1, 1949, bore the following typewritten statement on their faces: "Received payment 5/19/49. Policy reinstated in accordance with terms of Standard Provision Three." Plaintiff testified that when she received the second premium receipt for the month of May and the premium receipt for the month of June, that she noticed the foregoing statement appearing on these receipts but that she paid no attention to the same since she had her official receipt for the month of May and had sent to the defendant her check for the premium for the month of June in response to defendant's notice that the June premium was due.

The evidence discloses that all premium receipts issued by the defendant are dated the first of the month, including the receipt issued for the month of May 1949. The record shows that for the years 1947

to 1950 the plaintiff customarily sent to the defendant her check for the monthly premiums on or about the first of each month. Sometimes she sent in these monthly payments a few days prior to the first of the month, and sometimes she sent them in as much as four days after the first of the month, and on one occasion in the year 1947 and on another occasion in the year 1948 she was a month late in paying the premiums due, which premiums were accepted by the defendant and no lapse or forfeiture of the policies was declared. These checks for monthly premiums, drawn in 1947 through 1948, 1949, and 1950 by the plaintiff, were honored by the bank upon which they were drawn, at various dates, as shown by the record, not earlier than the 6th of the month and not later than the 21st of the month. There are in evidence twenty-two checks issued by the plaintiff to the defendant for the monthly premiums due between January 1, 1947, and May 1, 1949. Of these twenty-two checks appearing in the evidence, thirteen of them were honored by plaintiff's bank after the 15th of the month. The latest date on which any check was honored was the 21st of the month. The defendant at no time objected to the payment of premiums by check.

The evidence on behalf of the defendant was that it was the custom of the defendant to allow five days after a premium was due before the policy was considered lapsed and that if the premium was received by the 15th of the month, the policy was considered in effect for the full month and that if it was received after the 15th of the month, the premium was applied on the following month, although one representative of the company did testify that "these policies are due and payable on the first of the month or before and are supposed to lapse if they are not paid on that date."

356

The monthly income policy sued upon contained, among others, the following provisions: "This policy is issued in consideration of the statements in the application herefore, copy of which is attached hereto and made a part hereof, and the payment in advance of the initial amount required to keep this policy in force until November 1, 1948, and such further payments as may be required by the Company from time to time. This policy terminates on said date unless it is renewed for further terms, with the consent of the Company, by the payment of premiums for monthly, quarterly, semi-annual or annual terms as specified in the Premium Schedule below. The provisions of this policy or any renewal thereof shall not take effect unless the premium is actually paid and accepted previous to any loss hereunder for which claim is made."

The pertinent provisions of the hospital expense policy are: "This policy is issued in consideration of the statements in the application herefore, copy of which is attached hereto and made a part hereof, and the payment in advance of the initial amount required to keep this policy in force until November 1, 1948, and such further payments as may be required by the Company from time to time. This policy is issued and accepted subject to the regular premium provided for in this policy and in addition thereto such premium payments as may be required by the Company from time to time." Both policies contain this provision: "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company, or by any of its agents shall reinstate the policy but only to cover accidental injury thereafter sustained."

Appellee insists that appellant is estopped to declare a forfeiture of the policies here in question because of its practice in permitting the payment of premiums

357

after their due dates thereby inducing plaintiff to believe that payments of premiums could be made after their due dates. Counsel claim that appellant's previous practice amounts to a waiver of the provisions of the policies concerning payment of premiums. The theory of appellant is that the policies were not in effect on May 15, 1949, the date of appellee's injury, the policies having automatically lapsed on May 1, 1949, because the monthly premium for that month had not been paid; that said policies having lapsed were not reinstated until May 19, 1949, and in this connection calls our attention to this provision in both policies: "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company, or by any of its agents shall reinstate the policy but only to cover accidental injury thereafter sustained."

In *Baxter v. Metropolitan Life Ins. Co.*, 318 Ill. 369, at page 372, it is said: "Waiver by an insurer results when it by an act, statement or course of conduct toward the assured recognizes the policy as existing though the time for payment of the premium has expired. Forfeiture of life insurance policies is not favored, and unless the circumstances show a clear intention to claim a forfeiture for nonpayment of the premium such forfeiture will not be enforced. If the conduct of the insurer is such as to induce the assured to believe that a forfeiture will not be insisted upon, the insurer will be held to be estopped from taking advantage of such forfeiture. *Bennett v. Union Central Life Ins. Co.*, 203 Ill. 439; *Aetna Life Ins. Co. v. Sanford*, 200 *id.* 126; *Illinois Life Ass'n v. Wells*, 200 *id.* 445; *Manufacturers and Merchants Ins. Co. v. Armstrong*, 145 *id.* 469; *Chicago Life Ins. Co. v. Warner*, 80 *id.* 410."

An insurance company has the option to waive provisions as to forfeiture in an insurance

policy the same as any other provision (*Baxter v. Metropolitan Life Ins. Co., supra,* pp. 372–373; *Mims v. Mutual Benefit Health & Accident Ass'n,* 319 Ill. App. 239, 48 N. E. (2d) 796), and an insurance company is estopped to take advantage of a forfeiture where by its conduct it induces the insured to believe payment of premiums may be made after the due dates. (*Chicago Life Ins. Co. v. Warner,* 80 Ill. 410; *Illinois Life Ass'n v. Wells,* 200 Ill. 445; *Ballah v. Peoria Life Ass'n,* 168 Ill. App. 603.) Whether the conduct of appellant in this case was such as to lead appellee to believe that the company would not insist upon a strict adherence to the policy provisions concerning the payment of premiums was a question of fact to be submitted to the jury under proper instructions.

██ Appellant further urges that a premium is not paid until the check given in payment thereof is actually honored by the bank upon which it is drawn, which, in this case, was May 23, 1949. The record discloses that the premium check for the month of February, 1949, was not honored by the bank upon which it was drawn until the sixteenth day of February, 1949, and that the check for the monthly premium due for the month of March, 1949, was not honored by plaintiff's bank until the 16th day of March, 1949. Under defendant's theory that an insurance premium cannot be said to be paid until the check given for its payment is actually honored by the bank on which it is drawn, and under its practice of applying premiums paid after the fifteenth of the month to the next succeeding month, then the premiums received on appellee's policies for the months of February and March of 1949 were applied on the next succeeding months. This would mean that there could be no lapse of these policies during the month of May, 1949, the month of the injury, because the premiums on the policies had

been prepaid by the application of the premiums for the months of February and March to the next succeeding months. Furthermore, if the policies lapsed, as appellant contends would be the case if the monthly premiums were received after the fifteenth of the month, then, during the year 1947 and again during the year 1948, on one occasion in each year, premiums were accepted which were more than a month late, and if the policies were then subsequently reinstated, there has been an additional prepayment of premiums on appellee's policies. The record discloses, however, that the company charged for the full year of 1947 and for the full year of 1948 and up to May 1, 1949. Therefore, under appellant's own theory it is difficult to understand how a forfeiture can be claimed because a payment is not made by the 15th of the month and at the same time the company charges appellee for these periods of time for which the forfeiture is claimed. (*Mims v. Mutual Benefit Health & Accident Ass'n,* 319 Ill. App. 239, 48 N. E. (2d) 796).

Plaintiff's Exhibit "7A," which was the cancelled check given by appellee to appellant for the premuim due for the month of January, 1947, bears the stamp of the Union National Bank and Trust Company of Joliet, Illinois, (appellee's bank) and the perforation mark discloses the check was paid on January 20, 1947. In response to a question by counsel for appellee as to whether appellee's policies lapsed from January 1st to January 20th of that year, the representative of the defendant replied: "I don't know." From the record it appears to have been the practice of appellant to permit a payment of premium to relate back to the day on which it was due if the check given in payment of the premium was honored, and the jury were warranted in so finding. If the N. S. F. check was not returned to appellee but was retained by appellant, as testified to by appellee, and

was deposited by appellant a second time, then, upon its being paid when presented on May 23rd, this payment, under the prior practice of appellant, would relate back to the 1st day of May. Apparently the jury chose to believe appellee's version as to how the N. S. F. check was handled rather than appellant's. It is not disputed that the N. S. F. check was returned to appellant by its bank on May 12, 1949. On that date appellee had sufficient funds in her account to cover the check, so if the date when the defendant received the premium check is, in this instance, the date which is to be considered as the date that the premium is paid, rather than the date when the check is actually honored, then the premium for the month of May was paid by the fifteenth and appellee's policies, under the practice of appellant, did not lapse. Certainly, appellant could not hold the check in its possession until after the fifteenth and then deposit it, collect the proceeds, and yet insist upon a forfeiture.

After a review of the evidence found in this record, we cannot say, as a matter of law, that there is no evidence from which the jury might have concluded that appellant had not waived the provisions in the policies relative to the payment of premiums, nor do we believe that the verdict returned by the jury is contrary to the weight of the evidence.

In support of its contention, appellant relies on *Sistler v. Illinois Bankers Life Assurance Co.*, 341 Ill. App. 512, and *Soucie v. Illinois Agricultural Mutual Insurance Co.*, 323 Ill. App. 456. The *Sistler* case was a suit to reinstate an insurance policy. The N. S. F. check involved there was not sent through a second time by the defendant and subsequently honored. Also, in that case, it appeared that the insurance company gave notice to the insured that the policy had lapsed and returned to him the dishonored check. In the *Soucie* case, two special notices were sent by the com-

pany to the insured notifying him of the effect of a failure to pay the premium when due and there was no evidence showing any course of dealing between the insurance company and the insured of a waiver of prompt payment. The factual situations in these cases were not analogous to the factual situation in the instant case.

 The defendant also contends that it was error for the court to give on behalf of the plaintiff the following instructions: (a) ''In this case the policies of insurance issued by the Union Life Insurance Company provided for payment of monthly premiums in advance. However, the time and method of the payment of such premiums was optional with the company and might be waived by the company, by the course of dealings between the parties, or by the custom of the Company as shown by a preponderance of the evidence.'' (b) ''Where an insurance company induces the insured, who is Pearl Spiers in this case, to believe that the payment of the policy premiums may be made after the due date, then the company waives their right to insist on prompt payment of the premiums on the due date and if you believe from a preponderance of the evidence in this case that Pearl Spiers was led to believe through the course of dealings between the company and herself that these policies would not be forfeited for delay in payment on the first of each month of these policy premiums, then the Union Life Insurance Company, the defendant in this case, is estopped from taking advantage of the failure of Pearl Spiers to pay the monthly premiums due May 1, 1949, on said date and is estopped from forfeiting said policies and terminating said insurance under paragraph three of the standard provisions of said policies or under any other provisions of said policies.''

Counsel state that in these two instructions circumstances are set forth which, if proven, would constitute waiver, but insist that these instructions assume that the circumstances constituting waiver do exist and that the jury would treat them as peremptory instructions to find for the plaintiff. Counsel argue that it was error to give an instruction ending with the phrase "as shown by a preponderance of the evidence" and cite the cases of *Walsh v. Aylsworth,* 46 Ill. App. 516; *Chicago, B. & Q. Ry. Co. v. Sack,* 129 Ill. App. 58; and *Small v. Brainard,* 44 Ill. 355, as sustaining their contention.

There is some merit in appellant's criticism of these instructions, but the record shows that in addition to these two instructions the court gave six other instructions at the request of appellee and five instructions at the request of appellant. At the request of the appellant, this instruction was given: "By the terms of the policies in this case, the premium on each of the policies was payable monthly in advance, on the first day of each month, the failure to pay the premium on or before the day it became due will prevent a recovery in this case upon the policy upon which the premium was payable for any injury sustained by plaintiff during the time the premium was not paid unless such payment was waived." At the request of appellee, the following instruction was given: "The instructions now being given to you are the law of this case and must govern you in your deliberations. It is the right and the duty of the jury to determine all questions of fact. You must determine the facts from the evidence. The law of this case, as contained in these instructions, must be applied by you to the facts as you find them from the evidence. Neither by these instructions nor by any ruling or remark made by the Court, during the course of the trial, did or

does the Court mean to give any opinion on questions of fact. These instructions are to be considered by you as one connected series. You must not pick out any one individual instruction and disregard others, but you must take all of the instructions together as the law.''

While we do not approve of either of the instructions complained of, yet, in view of the other instructions given and the evidence found in this record, we do not believe that the judgment should be reversed. In *Illinois Steel Co. v. Hanson,* 97 Ill. App. 469, affirmed by the Supreme Court and reported in 195 Ill. 106, it was insisted that an instruction given in that case assumed the existence of facts in dispute. In the course of its opinion, the court, at page 108, said: ''The objection that another instruction erroneously assumed the existence of facts which were in dispute is without merit. The instruction referred to is not fairly susceptible of that construction, but if it were, it would not, in view of all the evidence and instructions, amount to reversible error.''

The issue submitted to the jury in this case was a simple one. The jury found that issue in favor of appellee. Their verdict is sustained by the law and by the evidence found in this record, and the judgment of the trial court is therefore affirmed.

*Judgment affirmed.*