**HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO,** Plaintiff-Appellant,

v.

**REPUBLIC INSURANCE COMPANY,** Defendant-Appellee.

No. 16568.

United States Court of Appeals Seventh Circuit.

Dec. 23, 1968.

Gerald White, Courshon & White, Chicago, Ill., for plaintiff-appellant.

Samuel Levin, Chicago, Ill., for appellee.

Before SWYGERT, FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

In this action [1] a lending institution mortgagee seeks recovery under an errors and omissions insurance policy. The claim is that the mortgagee failed to have requisite fire insurance in force when the mortgaged property was damaged by fire.

The mortgaged property was a shopping center. A builder's risk fire insurance policy ($925,000) had been in

---

1. Jurisdiction is founded on diversity. The parties have treated Illinois law as governing.

force while the shopping center was under construction. A condition in the policy provided that the shopping center was not to be occupied without the endorsed consent of the insurer. No endorsement was obtained, the building was occupied, and a fire (with $737,000 loss) occurred a month later.

There had been activity during the month which gave substance to a claim by the mortgagee that the builder's risk insurer had agreed orally or by conduct to insure after occupancy. The builder's risk insurer ultimately paid $600,000 in settlement. The district court found that valid fire insurance coverage did exist at the time of the fire, and judgment that this "precludes recovery" from the errors and omissions insurer was entered. The mortgagee appealed.

Plaintiff mortgagee is Home Federal Savings and Loan Association of Chicago (Home Federal). Defendant, issuer of the errors and omissions policy ($100,-000) covering Home Federal, is Republic Insurance Company. The mortgagor was Lake County Trust Company, as trustee. The beneficial owners of the shopping center were Harold Falcon and Joseph Schuchter. Northern Insurance Company of New York issued the builder's risk policy and allegedly agreed to insure after occupancy.

A complicating factor was Home General Insurance Agency (Home Agency). Home Agency is a partnership composed of persons interested in Home Federal. It operated as an insurance agency, dealing almost entirely in insurance for borrowers from Home Federal, served by personnel of Home Federal, and located in the Home Federal quarters. Home Agency was a licensed agent for Northern in Illinois. The property here involved was in Indiana, but there was a course of dealing between the Home Agency and Northern that when Home Agency produced an Indiana insured for Northern, a policy, signed in blank by a particular firm licensed as an agent for Northern in Indiana, would be delivered by Northern's Chicago office. The commission would be paid to Home Agency.

Otto Preisler was president of Home Federal and a partner in Home Agency. Northern named him as a person authorized to act for Home Agency as Northern's agent in Illinois. Karl Burger was insurance manager for Home Federal, and also performed the details of the work of Home Agency. Preisler and Burger figured in activity material to this case, but it is difficult to distinguish between their acts for Home Federal and those for Home Agency. Home Agency had an errors and omissions policy, issued by an insurer other than Republic, and not a party here.

The shopping center was occupied October 30, 1961. The fire occurred November 29, 1961. Home Federal had received a report in September indicating that the shopping center was nearly completed. Under usual procedure, this fact would have been brought to Burger's attention so that he could arrange for permanent insurance or secure an endorsement on the builder's risk policy, consenting to occupancy. Burger was not alerted, however, and it is clear that this slip up was the kind of error or accidental omission referred to in the Republic policy. It is also clear, however, that Preisler and Burger had knowledge of this omission a few days after October 30 and the policy, by its terms, would not cover loss resulting from a fire taking place more than ten days after Home Federal had knowledge that an error or accidental omission had occurred.

At the opening of the shopping center on October 30, Falcon asked Preisler to place permanent insurance and Preisler told Falcon that Falcon was "bound" by permanent insurance with Northern in the same amount as the builder's risk. Preisler related this to Burger a few days later and on November 8, Burger had a telephone conversation with Mrs. Kuh, office manager of Northern. According to Burger, he informed Mrs. Kuh the building was occupied, and she agreed to determine the appropriate rate for permanent insurance, issue the policy, and bill Home Agency. According to Mrs. Kuh, however, Burger told her the

building was completed, as distinguished from occupied, and merely asked her to ascertain the appropriate rate. She obtained the rate, but overlooked informing Burger before the fire.

It appears to be the theory of Home Federal that Burger should have checked his file a few days after November 8, and should have followed it up to secure the issuance of a policy or at least a written binder. Although more than ten days elapsed after several Home Federal-Home Agency people had knowledge of the failure to keep insurance in force at the time of occupancy, it is the theory that Burger's failure to follow up was a new error or accidental omission which did not become known to Home Federal until after the fire, and that the fire loss was therefore covered by the Republic policy.

Of course, in dealing with Northern, Home Federal had asserted that there was fire insurance in force on November 29 by virtue of (1) Preisler's oral binder, even though given in Indiana on Indiana property, or (2) estoppel of Northern to deny coverage under the builder's risk policy, Northern's agents having knowledge of the occupancy of the shopping center and having taken no action, or (3) Mrs. Kuh's agreement with Burger to issue the permanent policy.

The Republic policy sued on contains two sections, each providing coverage on account of error or accidental omission in the insured's customary procedure with respect to insurance of mortgaged real estate. Section I contains an agreement to indemnify loss to the mortgagee's interest. The insuring agreement of Section I of the policy reads in part:

"[T]his Company agrees to indemnify the Insured against loss to the Insured's mortgagee interest (including the Insured's mortgagee interest in any legal fiduciary capacity) in real property arising by reason of error or accidental omission in the operation of the Insured's customary procedure in requiring, procuring and maintaining valid insurance against the risks and perils described below: (a) payable to itself as mortgagee on such real property; and, (b) on such real property during and after foreclosure by the Insured or when sold under a conditional sales agreement or other instrument where title remains with the Insured; if by reason of such error or accidental omission, requisite insurance is not in force at the time of loss."

Section II is an agreement to pay liability of the mortgagee arising out of its failure to procure and maintain insurance for the benefit of the mortgagor:

"[T]his Company agrees with the named Insured to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages in any mortgagee, mortgage fiduciary or mortgage servicing agency capacity arising by reason of error or accidental omission in the operation of the Insured's customary procedure in procuring and maintaining valid insurance against the risks and perils described below for the benefit of the mortgagor in amounts and under terms and conditions customarily accepted by the mortgagor. * * *"

Home Federal claims primarily that it suffered a loss to its mortgagee interest, and is entitled to recover under Section I. The property was rebuilt after the fire, however, and in connection with the reconstruction, Home Federal advanced additional money to the mortgagor. The $600,000 received from Northern was applied toward repayment, but Home Federal made an allowance to the mortgagor of $120,000, apparently reflecting an acknowledgment of and allowance for Home Federal's liability to the mortgagor for failure fully to protect the latter from the fire loss. As an alternative to its claim under Section I, Home Federal predicates a claim under Section II on its liability to the mortgagor.

The district court found that insurance coverage with Northern was in force at the time of the fire. He reasoned that Preisler's knowledge of the occupancy of

the premises was imputed to Northern, and because Northern failed to declare a forfeiture on account of occupancy, the builder's risk policy remained in effect; that, moreover, Preisler made an oral contract with the mortgagor for permanent insurance, binding on Northern because of the course of dealing between Northern and Home Agency with respect to Indiana risks. The court believed Burger's version of his conversation with Mrs. Kuh, and gave weight to Northern's willingness to pay 81% of the loss in settlement.

Plaintiff does not really challenge the legal principles applied by the district court in reaching the determination that Northern was liable for the loss. Plaintiff criticizes some of the statements of fact in the memorandum opinion. Nevertheless, many facts were stipulated, and to the extent the court resolved conflicts in evidence, or drew inferences from stipulated facts, the finding was not clearly erroneous.

Plaintiff contends, however, that Burger's failure to follow up on his file after November 8 was an error or accidental omission in Home Federal's procedure (we point out it may really have amounted to a failure of Home Agency as much or more than Home Federal); that such error or accidental omission caused plaintiff to have only a doubtful and disputed claim that requisite insurance was in force rather than an uncontested policy or binder; and that the settlement between Home Federal and Northern, not shown to have been collusive or otherwise subject to challenge, established its loss, arising by reason of the error or accidental omission, at $137,000.

The language of the Republic policy does not specifically provide for a situation where fire insurance may arguably be in force but an error or accidental omission has made it uncertain. In such situation must the insured, in order to show that requisite fire insurance was not in force, proceed against the alleged fire insurer and suffer an adverse judgment? Or if the insured and the fire insurer reach a settlement not agreed to by the errors and omissions insurer, is the latter bound to recognize, to the extent of the discount, that requisite fire insurance was not in force? Or must the errors and omissions insurer be given a fair opportunity either to agree to the settlement or, if it chooses, pay the fire loss and proceed against the fire insurer as subrogee?[2]

██ Under the usual rule of construction of insurance contracts against the insurer, we conclude that where the insured has a claim that fire insurance was in force at the time of loss, but such claim has been rendered uncertain and subject to reasonable dispute as a result of an error or accidental omission in the insured's customary procedure, the insured is entitled to the protection of the errors and omissions policy without proceeding against the fire insurer and suffering an adverse decision. We think, however, that it must follow that the insured can not make a compromise settlement of its disputed claim against the fire insurer, thereby establishing the amount of liability of the errors and omissions insurer and destroying the latter's possible chance to recoup, without extending a fair opportunity to the latter to protect itself if it sees fit.

We are aware, of course, that the limit of the Republic policy was $100,000. The fire loss was $737,000. Republic may well have preferred to pay $100,000 than to pay $737,000 and sue Northern on Home Federal's claim. It should, however, have been given a fair opportunity. As will be seen, Republic was not a party to the settlement with Northern, and although it had some notice that a settlement might be negotiated, we do not think, under the circumstances discussed later, that it became bound by the settlement when made.

2. See Home Own. F. S. & L. Ass'n v. Northwestern F. & M. I. Co. (Mass., 1968), 238 N.E.2d 55, illustrating a some- what similar difficulty under an errors and omissions policy of the same type.

On the premise that Republic was not bound by the settlement with Northern, Home Federal had the burden of showing that requisite fire insurance was not in force, and the district court correctly determined that it was in force.

Home Federal contends, however, that this and other defenses were foreclosed by waiver or estoppel, and we deem it advisable to consider the several defenses and whether they were foreclosed.

*The ten day defense.* Under either Section I or Section II, there is excluded from the policy "loss resulting from: * * * Any occurrence taking place more than ten (10) days after the Insured had knowledge that an error or accidental omission had occurred." The obvious and earliest error or accidental omission in the operation of Home Federal's customary insurance procedure was the failure of someone to alert Burger to impending occupancy and Burger's resulting failure to obtain insurance which would be in force notwithstanding occupancy. This situation came to the attention of at least Preisler and Burger before November 8; the fire occurred November 29; and it must follow that if these are the only errors or accidental omissions to be considered, the ten day defense is sound.

It is possible to view Burger's act on November 8 as an effort on behalf of Home Agency to implement Preisler's oral binder of October 30. Viewing it, however, as an attempt by Burger to order insurance from Northern on behalf of Home Federal, it appears that oral dealing with Mrs. Kuh was customary procedure. Had Burger checked the file a few days later, he would undoubtedly have discovered that Mrs. Kuh had misunderstood him. Home Federal contends that his failure to do so was an error or accidental omission in customary procedure which may be considered separately and which resulted in failure to have requisite insurance in force, and that the ten day defense is inapplicable because this later failure did not come to anyone's attention before the fire. Republic contends, in effect, that where an insured once realizes it is without protection as a result of an error or accidental omission and attempts to obtain protection, but fails because of a further error or accidental omission, and a loss occurs more than ten days after the first realization, the ten day defense controls and the insured is no better off than if it had made no effort to cure the first failure. Republic's position, it seems to us, is erroneous, because it depends upon construction of a debatable policy provision in favor of rather than against the insurer.[3]

*The proof of loss defense.* Republic pleaded, and it is undisputed, that Home Federal did not render a proof of loss as required by Section I of the policy. By the terms of the policy, proof of loss must be rendered within 60 days after the loss unless the time be extended in writing by Republic. It is clear from the language employed in the proof of loss provision that the "loss" within 60 days of which proof of loss must be filed was, in this case, the fire loss on November 29, 1961, rather than the settlement with Northern on May 25, 1962, as Home Federal appears to argue. In any event no proof of loss was ever filed, and no extension granted.

*Affirmative defenses with respect to Section II:* Section II of the Republic policy contains provisions frequently found in policies of liability insurance, including a prohibition that the insured shall not voluntarily assume any obligation, a requirement that if a claim is made against the insured, the insured shall immediately forward it to Republic, and a "no action" clause requiring that insured's liability must first be determined by judgment against the insured after actual trial or by written agreement to which Republic is a party. It is undisputed that Home Federal never gave Republic any notice that the mortgagor made a claim against Home Fed-

3. See American Financial Corp. v. Firemen's Fund Ins. Co. (1968), 15 Ohio St.2d 171, 239

eral, that Home Federal voluntarily assumed an obligation to make a $120,000 allowance to the mortgagor for its failure to insure, and that liability was not determined by judgment nor agreed to by Republic.

Unless there be merit to Home Federal's claim of waiver or estoppel, the proof of loss defense to liability under Section I and the defenses just listed with respect to Section II are sufficient as a matter of law.

Home Federal contends that Republic denied liability under its policy and stated only two grounds for denial. Home Federal contends (1) that such denial excused Home Federal from further fulfillment of conditions of the policies and (2) that Republic, by such denial, waived or was estopped from setting up grounds of defense other than those stated.

In support of proposition (1), Home Federal cites Stoltz v. National Indemnity of Omaha, Nebraska (1952), 345 Ill. App. 495, 104 N.E.2d 320, 323; American Central Ins. Co. v. Henninger (1900), 87 Ill.App. 440; Beckley v. Otsego County Farmers Co-op Fire Ins. Co. (1957), 3 A.D.2d 190, 159 N.Y.S.2d 270, 274; and Buysse v. Connecticut Fire Ins. Co. (1926), 240 Ill.App. 324, 329. Home Federal would also equate the denial of liability with refusal to defend an action to establish Home Federal's liability to the mortgagor, and cites decisions that such refusal forecloses reliance on the prohibition against acknowledgment or settlement of the liability by the insured: De Luxe Motor Stages of Illinois, Inc. v. Hartford Accident and Indemnity Co. (1967), 88 Ill.App.2d 188, 232 N.E.2d 141; Otteman v. Interstate Fire & Casualty Co. (1961), 172 Neb. 574, 111 N.W. 2d 97, 89 A.L.R.2d 1182; American Fire & Cas. Co., Orlando, Florida v. Kaplan (D.C.Mun.Ct. of App., 1962), 183 A.2d 914.

In support of proposition (2) Home Federal cites Danberg v. Langman (1925), 318 Ill. 266, 149 N.E. 245, 247, and other Illinois decisions, including Coulter v. American Employees' Ins. Co. (1948), 333 Ill.App. 631, 78 N.E.2d 131.

Home Federal contends that Republic's denial of liability did not mention the claim that Northern was liable for the loss. As will be seen, we think the claim was implied if not fully expressed.

Home Federal contends that proposition (1) precluded reliance on the failure to present a proof of loss, because the proof of loss was not due until sixty days after the settlement with Northern, and long after the denial. As already indicated we think it clear that the time for proof of loss had expired before Republic's denial.

Home Federal contends that either proposition (1) or proposition (2) precludes reliance on the Section II defenses and proposition (2) precludes reliance on failure to present proof of loss. We conclude that under the circumstances surrounding the denial of liability, the waiver or estoppel doctrine can not fairly be applied.

The denial of liability relied on by Home Federal is a letter, dated April 18, 1962, from Mr. Perry, president of Republic, to Mr. Malosky, a vice president of Republic, located in the Chicago area office. Later in April, at Mr. Burger's request, Malosky read the letter to Burger over the telephone.

The April 18 letter read as follows:

"Mr. Carruth is away from the office this week, so I thought I should respond to your letter of April 13th. I don't feel that we should become involved at all in any discussion about this loss for the following reasons:

"1. The Home Federal Savings and Loan Association had knowledge of the error 'completion and occupancy of building' more than 10 days prior to the fire, because the Association's secretary's letter of January 24, 1962, states 'permanent fire insurance to replace the builder's risk policy had been requested by telephone. * * *

"2. Under the form attached to our policy, 'Exclusions' section 1(b), it reads 'Any error in judgment as to amount, form, conditions or pro-

visions of insurance.' This clause would free us from any liability.

"I feel that our best interests would be served by avoiding any offer of voluntary contribution. It is up to the Northern to pay the loss. We certainly aren't liable in any manner under our Errors and Omissions policy. An extra copy of this letter is attached so that you can forward it to our attorney, Mr. Sam Levin."

Counsel for Home Federal argues that after the April 18 letter was read to Burger, Republic was limited to the two defenses numbered 1 and 2 in the letter. As we read the letter, however, Mr. Perry sufficiently indicated his feeling that Northern was liable so that there could be no waiver nor estoppel as to that defense in any event.

The April letter was preceded by a letter from Home Federal to Republic, January 24, 1962, and a conversation of several people from Home Federal with Malosky on April 13. The April 18 letter was a reply to a memorandum in which Mr. Malosky reported on the April 13 conversation.

The significance and effect of the April 18 letter must be measured in the light of the January 24 letter and April 13 conversation. There were no other communications between Home Federal and Republic.

The January 24 letter asserted that it was notice "of a claim which may arise" under the Republic policy. It briefly stated that the fire had occurred after occupancy, that Home Federal had a builder's risk policy issued by Northern, that "permanent fire insurance to replace the Builders' Risk policy had been requested by telephone but had not issued at the time of the fire," and that adjustment with Northern was proceeding after Northern insisted upon execution of a non-waiver agreement. The letter closed: "From the foregoing there is an inference that Northern Insurance Company may interpose legal defenses, the nature of which are yet unknown, to the payment of the owners' claim and to our rights as mortgagee after the figures are adjusted. Accordingly, this notice of existing facts is forwarded to you for such investigation and action you may care to institute."

Nothing in the letter specified a particular error or accidental omission in Home Federal's customary insurance procedure, nor disclosed any claim by the mortgagor that Home Federal was liable to the mortgagor for failure to insure.

Mr. Preisler and other representatives of Home Federal met with Mr. Malosky on April 13. They had informally discussed matters with the president of Northern,[4] and the idea had been generated at that conference that Republic and the errors and omissions insurer of Home Agency should be asked to contribute to a settlement. The meeting with Malosky was devoted in the main to seeking a contribution by Republic. As an inducement it was suggested that Home Agency would increase the amount of insurance placed with Republic, substantially increasing premiums received. The Home Federal people reported that a similar assurance had been offered to Northern. The testimony shows that there was scant, if indeed any, conversation about a factual or legal basis for liability of Republic to Home Federal or liability of Home Federal to the mortgagor. There was surely no clear assertion of the theory, now advanced by Home Federal, that Burger's failure to check the file after November 8 was an error or accidental omission in Home Federal's customary insurance procedure, nor that Home Federal had a duty to obtain insurance to protect the mortgagor.

Mr. Malosky agreed to ask his home office about the requested contribution and made a written report. Mr. Perry wrote his April 18 letter in reply. The contents of the letter were communicated to Home Federal by being read to Bur-

---

4. Northern did not formally deny liability until April 25.

ger over the telephone. Mr. Perry seems to have treated the matter as a claim by Home Federal under Section I, based on the fact that Home Federal had inadvertently permitted a breach of the occupancy condition of the builder's risk policy. The information given Republic by the January 24 letter and the report of the April 13 conversation did not reasonably require broader consideration. Under the circumstances of this case denial of liability on the grounds of defense mentioned in Perry's letter did not foreclose other defenses when Home Federal cast its claim in a different mold.

 We conclude that Republic was not bound by the settlement made with Northern, and that in any event, its defenses of failure to present a proof of loss under Section I, and of failures with respect to notice of claim and determination of liability under Section II are adequate.

We feel obliged to comment on the unsatisfactory form of the judgment entered in the district court. The judge prepared on September 11, 1967 a "Memorandum Opinion and Order." The word "Enter" appears at the end, followed by his signature.

The judge or a clerk also wrote the name and number of the action, the date, and a paragraph similar to the last paragraph of the memorandum, on blank spaces in a printed form customarily used in the district court to record motions presented, appearances thereon, and dispositions thereof.

The paragraph inserted read as follows:

"Pursuant to Memorandum Opinion and Order, the court finds that plaintiff had insurance coverage with Northern Insurance Co. The existence of such insurance coverage precludes recovery under either Section I or Section II of the Omissions and Errors Policy with defendant. (Draft)"

This form bears the judge's initials, but no filing stamp. The quoted paragraph, however, was entered in the docket and was apparently the document Home Federal referred to as the judgment in its notice of appeal.

This form is the only paper in the record which can be treated as a judgment "set forth on a separate document" under Rule 58 and "entered" in the civil docket under Rule 79(a). If we could not so treat it, we would have no jurisdiction of the appeal.[5] Although we decide that this paper is properly treated as a judgment denying relief to plaintiff, greater care ought to have been exercised in framing the document which constituted the ultimate disposition of an action and from which an appeal was authorized.

The judgment entered September 11, 1967 is modified so as to dismiss the complaint upon its merits, and, as so modified, is affirmed.

5. See St. Louis Amusement Co. v. Paramount Film Distr. Corp. (8th Cir. 1946), 156 F.2d 400; McAlister v. C. J. Dick Towing Co. (3rd Cir. 1949), 175 F.2d 652;

Contra: Carey, Baxter & Kennedy, Inc. v. Wilshire Oil Co. of Texas (10th Cir. 1965), 346 F.2d 110.