**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 5 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MIDLAND MORTGAGE COMPANY,

Plaintiff - Appellee,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

Defendant - Appellant.

Nos. 00-6286
01-6179

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(DC. No. 99-CV-589-T)**

---

John B. Hayes (Robert L. Magrini and Evan B. Gatewood on the briefs), Hayes &
Magrini, Oklahoma City, Oklahoma, for Defendant-Appellant.

John N. Hermes (John D. Stiner with him on the briefs), McAfee & Taft, a
Professional Corporation, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **EBEL**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Appellee Midland Mortgage holds and services mortgage loans. To protect its interests as a mortgage holder, Midland verifies whether the property owner has secured insurance to protect the property from loss. Insurance providers notify Midland when a policy expires or is cancelled. Midland then notifies the property owner that the owner is required to secure insurance. If the owner fails to secure the required insurance, Midland obtains a policy on the owners' behalf through an insurance carrier under contract with Midland. In the industry, this is called "forceplacing" insurance.

Forceplaced insurance is more expensive than typical insurance and provides narrower coverage. The primary purpose of the forceplaced policy is to protect the mortgage holder, not the property owner. Midland collects the premiums for the forceplaced insurance as part of the mortgage payment. If the property owner secures a replacement policy or can prove that coverage has remained in force uninterrupted, Midland refunds any premium collected to the property owner.

Midland serviced Eliza Kirkland's mortgage loan. Allstate erroneously notified Ms. Kirkland's previous mortgage holder that it had terminated her coverage. After an extensive delay, this erroneous information was forwarded to Midland.

Typically upon receiving notice of the expiration or cancellation of an

insurance policy, Midland sends two notices to the property owner informing the owner of the need to secure insurance. These notices indicate that the failure to voluntarily obtain insurance will result in Midland forceplacing insurance. In the interim, Midland secures a temporary binder of coverage through its contract provider.

Because of the misinformation provided in Allstate's notice to Ms. Kirkland's previous mortgage holder and that holder's extensive delay in forwarding the notice to Midland, Midland and its contract carrier were under the mistaken impression that Ms. Kirkland's home had been uninsured for several months. Midland's contract carrier refused to issue a binder but agreed to provide a policy on Ms. Kirkland's home. Believing the home to be uninsured, Midland secured the policy and notified Ms. Kirkland that it had obtained insurance coverage without sending out the two notices it typically sends notifying the property holder of a need to find insurance coverage.

Upon receipt of the notice, Ms. Kirkland contacted Midland and requested that Midland contact her Allstate agent. Midland complied. Allstate erroneously "confirmed" that it had terminated coverage under Ms. Kirkland's policy several months prior. Eventually, it was discovered that Allstate's policy had been in force the entire time. Midland refunded all premiums to Ms. Kirkland.

Ms. Kirkland, on behalf of a class, brought a lawsuit against Midland and

its contract insurance provider claiming that they had conspired to unnecessarily forceplace insurance. Upon receipt of the Kirkland litigation, Midland requested that United States Fidelity and Guaranty Company (USF&G) provide a defense to the litigation pursuant to the Mortgage Holders Errors and Omissions Policy USF&G had issued to Midland. USF&G refused to defend Midland in the Kirkland litigation.

Midland moved for summary judgment against USF&G claiming that USF&G's policy potentially provided coverage for Ms. Kirkland's claim against Midland. The district court granted Midland's summary judgment motion and ordered USF&G to defend Midland in the Kirkland litigation. The district court also awarded Midland its attorney fees because Midland was the prevailing party. USF&G appeals to this court arguing that it should not be required to defend the Kirkland litigation and that it should not be obligated to pay Midland's attorney fees because Midland would no longer be the prevailing party if we resolve the appeal in USF&G's favor. "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Sitting in diversity, we apply Oklahoma law as if this case had been brought in Oklahoma state court. Habermehl v. Potter, 153 F.3d 1137, 1139 (10th Cir. 1998) ("[U]nless there is a direct conflict

between a federal rule and state law, the state law applies in diversity actions.").

At issue is the scope of Coverage C of USF&G's policy. Coverage C provides:

> We will pay those sums that you become legally obligated to pay as damages due to error or accidental omission in the operation of your customary procedure in processing and maintaining "valid insurance" against the Covered Causes of Loss for the benefit of the mortgagor, in amounts, and under conditions, customarily accepted by the mortgagor.

> The damages payable under this Coverage Form must arise out of your capacity as a mortgage holder, mortgage fiduciary or mortgage servicing agency.

Aplt. App. at 42.

Typically, this policy provision applies when, through an error or accidental omission, a mortgage holder's employee fails to secure insurance and the underlying property is damaged or destroyed by a peril that would have been covered had the mortgage holder forceplaced coverage. Thus, the mortgage holder's policy typically protects the mortgage holder from the consequences of its own mistakes by paying for losses that the underlying insurance policy would have paid if in force. In this manner, the mortgage holder's interest in the underlying property is maintained. However, the issue in this case is not whether Midland's claim is typical, but whether Coverage C potentially provides coverage for the Kirkland litigation.

USF&G's duty to defend Midland pursuant to its policy is broader than its

duty to indemnify.  First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md., 928 P.2d 298, 303 (Okla. 1996).  "An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy.  Id. at 303 (emphasis in original).  Any doubts are resolved in favor of the insured.  See Maryland Cas. Co. v. Willsey, 380 P.2d 254, 258 (Okla. 1963).

USF&G maintains that the policy only provides coverage in the event that, through an error or omission, Midland fails to forceplace coverage on a building and that building is subsequently damaged by a peril that would have been covered by the insurance Midland failed to secure.  The policy language USF&G employed, however, permits a broader interpretation.  The plain language of the policy does not unambiguously limit coverage to failures to process or maintain insurance.  Instead, the policy purports to cover any damages caused by an error or omission in processing or maintaining insurance "in amounts, and under conditions[] customarily accepted by the mortgagor."  Aplt. App. at 42.

While there are no prior cases interpreting the same USF&G policy provision at issue here, our research reveals that a simple alteration in Coverage C would unambiguously provide coverage only in instances where Midland had failed to forceplace insurance.  For instance, the inclusion of a phrase such as "if, by reason of such error or accidental omission, requisite insurance is not in force

-6-

at the time of the loss," would unambiguously limit coverage to situations where the mortgage holder has failed to forceplace insurance. American Fin. Corp. v. Fireman's Fund Ins. Co., 239 N.E.2d 33, 34 (Ohio 1968); see also Home Fed. Savings & Loan Ass'n of Chicago v. Republic Ins. Co., 405 F.2d 18, 20 (7th Cir. 1968) (interpreting policy including language if "requisite insurance is not in force at the time of loss").

Furthermore, we find persuasive Midland's argument that procuring too much insurance could potentially trigger coverage under the USF&G policy. Customarily, mortgagors require insurance in an amount equal to the value of the property insured. In the present case, Ms. Kirkland's home had two insurance policies in force at the same time, due in part to Midland's mistaken belief that Ms. Kirkland's property was not covered by the Allstate policy. By forceplacing insurance, Ms. Kirkland's property was now insured in an amount well in excess of the property's value. Mortgagors and insurance companies do not customarily permit property owners to secure coverage in excess of the property's value because this would provide the property owner with an incentive to destroy the property.

At best, USF&G can prove that its coverage is ambiguous. Accordingly, we interpret any potential ambiguity against the drafter (USF&G) and hold that USF&G's policy potentially provides coverage for the Kirkland litigation. See

<u>Pitchford v. Electrical Workers' Ben. Ass'n</u>, 113 P.2d 591, 593 (Okla. 1941).  We affirm the district court's grant of Midland's summary judgment motion which requires USF&G to provide a defense to Midland in the Kirkland litigation. Because we affirm the district court's order, Midland remains the prevailing party and is entitled to its attorney fees as previously ordered.

    **AFFIRMED**.