Wayne Stoltz and Jack Stoltz, Trading as Stoltz Trucking Company, a Copartnership, Appellees, v. National Indemnity Company of Omaha, Nebraska, Appellant.

Gen. No. 45,499.

Opinion filed February 19, 1952. Rehearing denied March 3, 1952. Released for publication March 3, 1952.

ARNOLD F. BERGER, of Chicago, for appellant; SAMUEL LEVIN, of Chicago, of counsel.

ECKERT, PETERSON & LEEMING, of Chicago, for appellees; WALTER W. ROSS, JR., and HERBERT C. LOTH, JR., both of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is a chancery action filed by plaintiffs (appellees) based upon a policy of insurance issued by defendant (appellant) to plaintiffs. The policy, by its terms and provisions, covered a 1948 Chevrolet tractor against direct and accidental loss or damage to the tractor named in the policy as the result of risks or hazards named, and specified the actual cash value

of the tractor at the time of the loss within limits of liability.

Plaintiffs claimed that a trailer was intended to be covered by the policy and was by mistake omitted from it. Defendant's answer admitted its obligation to pay for the loss or damage to the tractor named in the policy, but denied its obligation to pay for a trailer and that the policy issued was intended to cover a trailer.

After a trial, the court entered a decree reforming the policy to include the trailer and entered a judgment for $3,800, which covered the actual cash value of the tractor on or about October 14, 1949, of $1,800, and the actual cash value of the trailer not covered by the policy of $2,500 with interest from December 13, 1949, to December 13, 1950, at five per cent per annum, amounting to $190. This is an appeal from said judgment and decree.

Defendant contends that the court erred in reforming the policy in that there was no mistake such as would entitle the plaintiffs to reformation. A decision upon this point requires an analysis of the evidence.

The facts, as revealed by the testimony, show that on December 1st or 2nd the plaintiffs, O. A. Stoltz and Wayne Stoltz, were partners doing business as Stoltz Trucking Company, not Inc. Prior to the purchase of the tractor and trailer in question they had sold two trucks which they owned and had bought one tractor and one trailer. The tractor was a new 1948 two-ton Chevrolet and the trailer a new 1948 American Tandem. Edwin C. Lipton was an insurance broker who had handled all the insurance for plaintiffs. On December 1st or 2nd of 1948, O. A. Stoltz, one of the plaintiffs, called Lipton in regard to insurance for the tractor and trailer he and his partner Wayne had bought. Lipton, who had never written tractor and trailer insurance before, went over to

O. A. Stoltz's house to get the information regarding the tractor and trailer. At this meeting a memorandum (Plaintiffs' Exhibit 1) was given to Lipton in the handwriting of O. A. Stoltz, setting forth the following words and figures: "1948 Chev. tractor; 1948 Amer. Tandem trailer; purchased from the American Transit Co.; $6,100.00." Lipton took this memorandum to the office of Kurt Hitke & Co., Inc. on December 2, 1948, and was introduced to Fred R. Mueller, the truck underwriter for Kurt Hitke & Co. He showed Mueller Plaintiffs' Exhibit 1 and asked if he would accept such risks. Mueller told Lipton he would but he would have to have additional information before he could quote rates or issue a policy and wrote out a list for Lipton (Plaintiffs' Exhibit 2) of the facts needed. The list asked among other things for a description of the vehicles. Mueller denied that he wrote Plaintiffs' Exhibit 2. Lipton told Mueller he would contact Stoltz and get the information. Lipton took Plaintiffs' Exhibit 2 to Stoltz, asked him the questions and wrote out the answers on another piece of paper (Plaintiffs' Exhibit 3). Included in Plaintiffs' Exhibit 3 is the description of the tractor and trailer with the exception of the tractor number which was given to Lipton later. The next day Lipton took Plaintiffs' Exhibit 3 to Mueller and told him he had the information and asked if he would give him the rates. On the back of Plaintiffs' Exhibit 3 in Lipton's handwriting are the premium rates quoted by Mueller to Lipton. This was on December 3. Lipton asked Mueller if he could have the contract written that day or the next day and Mueller said all he had to have was the numbers. Lipton got the rates for $250 deductible and $500 deductible. He informed Stoltz of the rates and Stoltz told him that he wanted $500 deductible and that he would get the numbers of the tractor and trailer the next morning from his partner.

Lipton got the number of the tractor but not the trailer.

On the morning of December 4 Lipton phoned Kurt Hitke's office and asked for Mr. Mueller and was told he was out, so he asked for his secretary and gave her the facts they were waiting for in order to write the contract. He told her he wanted a $500 deductible with the coverage he had discussed with Mr. Mueller. The original cost of the tractor and trailer was $6,100 and the coverage $5,600. The girl told Lipton he could get the contract that day if he paid for it. Nothing was said about the number of the trailer. Lipton presented the checks covering the premium of $367 and picked up the policy, Plaintiffs' Exhibit 7, which was issued by the defendant and countersigned by Kurt Hitke & Co. as authorized agent. He checked it as to the commission, the purchase price of $6,100 and the $5,600 coverage. He delivered the policy to plaintiffs. In April of 1949 for a consideration of $56.09 Lipton obtained from Kurt Hitke's office a rider endorsement covering a larger radius for the operations of plaintiffs' truck. Mueller denied that at any time he ever discussed the writing of insurance on the trailer with Lipton and that he knew nothing about the trailer until the loss occurred.

On October 14, 1949, the tractor-trailer combination of plaintiffs was involved in an accident and totally demolished. The next day, October 15, Lipton on behalf of plaintiffs went to Kurt Hitke's office and reported the loss. Mueller said he would get out the records and put an adjuster on the claim immediately. Around October 15 an adjuster told plaintiffs that the policy covered only the tractor. Plaintiffs told the adjuster that this was certainly wrong because they insured both. About a week later Lipton informed Mueller of the facts that the adjuster had told Stoltz and said that this must be a typographical error but

Mueller said it was no error. He told Mueller that they had insured it for $5,600 and that the policy called for that much insurance, which the tractor alone wasn't worth, and that there was no doubt but what the intent was that both were to be covered. Mueller replied that it wasn't up to him to determine the value of the tractor in writing up the policy.

Plaintiffs' Exhibit 7 was issued by the defendant and countersigned by Kurt Hitke of Kurt Hitke & Co., Inc. as authorized agent. It shows on its face that the price of the "automobile" insured was $6,100 and provides collision coverage on said automobile in the amount of $5,600 ($6,100 less $500 deductible). However, it shows only the tractor coverage with its serial and motor numbers.

Mueller denied that Kurt Hitke & Co. subscribed to a market service which showed the valuation of vehicles. Plaintiffs showed that Kurt Hitke subscribed to the Red Book Market Report and that the price of vehicles could be determined by referring to the book. After this evidence Mueller was recalled and admitted they subscribed to such a service.

Plaintiffs' evidence is strong and convincing that both parties understood that the subject insurance policy was to cover both the tractor and trailer. It was proved that $6,100 was the actual cost of both the tractor and trailer and this fact was known to defendant's agent who saw two memoranda describing the property to be covered, both of which included the trailer. Defendant's own agent wrote out a memorandum asking for a description of the vehicles. Yet because of mistake of defendant's agent, the policy as written omitted reference to the trailer although it showed $6,100 as the cost of "the automobile" insured with a premium of $367 based on the value of both tractor and trailer. Where the contracting parties to a policy of insurance make a mistake and the

policy fails to express the real contract between them, and provisions other than those intended are inserted or omitted, equity has the right to grant relief by reformation of the contract. *Beddow v. Hicks,* 303 Ill. App. 247; *German Fire Ins. Co. v. Gueck,* 130 Ill. 345; *Home Ins. & Bank. Co. v. Myer,* 93 Ill. 271.

■ The court heard the testimony of the witnesses. Mueller was the only witness presented by the defendant. The court was impressed with the testimony of plaintiffs' witnesses and therefore was justified in reforming the insurance policy issued by defendant so that the policy correctly reflected the terms which were originally agreed upon and which were omitted from the face of the policy by mistake.

■ Defendant contends that the court cannot make a new contract by supplying provisions, nor can it give plain and unambiguous terms a distorted construction that will defeat the clear intent and purpose of the contract and cites as authority *Zitnik v. Burik,* 395 Ill. 182; *Moscov v. Mutual Life Ins. Co.,* 387 Ill. 378; and *Capps v. National Union Fire Ins. Co.,* 318 Ill. 350. In each instance the cases cited were actions at law and there was no contention that the policies involved did not express the true agreement of the parties. The question in issue was the proper construction of the policy. They were not equitable actions for reformation of a contract to express the true agreement of the parties and, therefore, have no application in this case.

■ Defendant further contends that a person who accepts and retains possession of an insurance policy is bound to know its contents and cites in support thereof the cases of *Pollock v. Connecticut Fire Ins. Co.,* 362 Ill. 313; and *Capps v. National Union Fire Ins. Co.,* 318 Ill. 350. In each instance the cases cited by defendant were actions at law on a policy to collect for a loss sustained and involved the construction of

501

the insurance policy. This rule does not apply to an equitable proceeding for reformation and the insured's mistake in failing to discover the terms of the policy is not negligence as a matter of law. *Hould v. Maryland Casualty Co.,* 83 N. H. 474, and *Heath Delivery Service v. Michigan Mutual Liability Co.,* 257 Mich. 482. The trial court heard the testimony of the parties. After hearing such testimony, it found that the plaintiffs were not negligent. To set aside such finding, we must decide it was against the manifest weight of the evidence. Such is not the case.

Defendant further contends that plaintiffs' failure to comply with the policy provision requiring sworn proof of loss to be filed within 60 days after a loss bars the recovery. It is the rule in Illinois that an insurer's denial of liability for loss claimed by an insured to come within the protection of the policy, such denial being based on grounds other than insured's failure to file proof of loss, waives or renders unnecessary compliance with the policy requirement respecting the filing of proof of loss. *Lumbermen's Mutual Ins. Co. v. Bell,* 166 Ill. 400; *Mims v. Mutual Ben. Health & Accident Ass'n,* 319 Ill. App. 239; *Coulter v. American Employers' Ins. Co.,* 333 Ill. App. 631; *West v. Franklin Fire Ins. Co.,* 245 Ill. App. 124.

The facts show that defendant admitted liability as to the tractor but denied liability as to the trailer immediately following the loss, claiming that the trailer was not covered by the policy. Under such circumstances it would have been a useless act for plaintiffs to have filed proofs of loss. The law heretofore enunciated applies.

We are of the opinion that the evidence supports the findings of the trial court and that such findings

in equity entitle the plaintiffs to the relief granted in the decree. The decree of the trial court is affirmed.

*Decree affirmed.*

TUOHY, P. J., concurs.

SCHWARTZ, J., took no part.