George A. BRADSHAW v. MOTORS INSURANCE CORPORATION and CIM INSURANCE CORPORATION

77-355                                    566 S.W. 2d 134

Opinion delivered May 22, 1978
(Division II)

*Noel F. Bryant,* of *Brockman, Brockman & Gunti,* for appellant.

*Barber, McCaskill, Amsler, Jones & Hale,* for appellees.

GEORGE HOWARD, JR., Justice. The basic question to be resolved is whether there is substantial evidence to support the trial court's holding that appellees effectively canceled an insurance policy extending comprehensive and collision coverage on a pickup truck owned by appellant by simply substituting another policy which is not materially different from the first policy, except an increasement in premium and is designated as a commercial policy whereas the first policy is characterized as a policy for family use. Of course, if the answer is in the affirmative, we must affirm, while on the other hand, if the answer is in the negative, we must reverse.

## THE FACTS

On June 10, 1974, appellant purchased a 1974 GMC pickup truck from Homer Cogbill of Star City, Arkansas. Appellant made application for insurance coverage providing for comprehensive and collision protection. The coverage dated from June 10, 1974, to June 10, 1975, and the annual premium of $127.00 was paid in full at the time the application was made. The policy was returned to appellees' agent, Homer Cogbill, who countersigned the policy and delivered it to appellant. The Bank of Star City was designated as a party in interest in view of the fact it was the lienholder having financed the purchase of the vehicle.

On August 14, 1974, appellees' underwriting department sent appellant a letter stating that a substituted policy

was being written inasmuch as appellees had information to the effect that appellant was using his truck for commercial or business purposes and, consequently, the substituted policy being written was based on commercial rates requiring an additional premium of $85.00. A few days later, appellant received another communication from appellees containing a bill for the additional $85.00 premium. The statement also provided that if there was any question about the matter, appellant should call the local branch office collect. Appellant immediately called the Little Rock office of appellees where a representative advised appellant that the additional $85.00 premium charge was being assessed because appellant's truck was used as a commercial vehicle. Appellant's response was "A. I told her I did not . . . and I did not need it . . . any commercial insurance on it."

Appellant further advised the representative that his vehicle was not being used for commercial purposes, but was simply used as transportation to and from his place of employment.

Appellant subsequently received the substituted policy.[1] However, appellant refused to pay the additional premium although he had received approximately three written demands from appellees and continued to retain possession of the initial policy.

On December 26, 1974, appellees mailed to appellant a notice of cancellation of the substituted policy stating that the policy would be canceled effective January 15, 1975, unless the additional premium in the sum of $85.00 was received on or before January 15, 1975.

On February 21, 1975, appellant's vehicle was involved in an accident and was rendered a total loss. Appellant made demand upon appellees for payment, but appellees refused to honor the claim, contending that the first policy was canceled by substitution of the second policy and the second policy was canceled for nonpayment of premium.

---

[1]The substituted policy specifically deleted towing and labor charges which were covered under the initial policy. Otherwise, the two policies are essentially the same.

On June 17, 1976, the appellees, pursuant to an agreement with the Bank of Star City, paid to the Bank of Star City the sum of $3,654.40 as satisfaction of the outstanding indebtedness owed to the bank by appellant on the vehicle.[2] The Bank of Star City executed an assignment of its rights to the installment transaction with appellant for the purchase of the vehicle to appellees pursuant to the subrogation provision contained in the substituted insurance policy.

Appellant filed suit against appellees for damages sustained as a result of the total loss to his pickup truck. Appellees filed a counterclaim for the money paid to the Bank of Star City pursuant to the subrogation provision in the substituted policy.

## HOLDING OF THE TRIAL COURT

The trial court, sitting without a jury, rendered the following decision:

1. The trial court found that the first policy of insurance was effectively canceled and that the appellant accepted the second policy of insurance.

2. That appellees properly canceled the substituted policy which became effective January 15, 1975.

3. That appellees were entitled to a judgment against appellant on its counterclaim in the sum of $3,-654.40, the amount paid by appellees to the Bank of Star City.

## APPELLANT'S CONTENTIONS FOR REVERSAL

1. The trial court erred in finding that the initial policy, a family policy, was effectively canceled by the substitution of a commercial policy.

---

[2]Because of a clerical error which occurred in the Little Rock Office of appellees, the name of the Bank of Star City as lienholder was omitted from the substituted policy. Consequently, the Bank of Star City never received notice of the cancellation of the substituted policy and appellees felt that it was obligated under these circumstances to pay the bank the balance remaining under the installment contract the bank had with appellant.

2. The trial court erred in holding that appellees were subrogated to the rights of the Bank of Star City against appellant under the security agreement the Bank of Star City received for financing the purchase of the vehicle for appellant.

## THE DECISION

We are persuaded that appellant's contention that the trial court committed error in holding that the initial policy, a family policy, was effectively canceled by the substitution of a commercial type policy has merit and we, accordingly, reverse the trial court.

In relevant part and which is germane for a resolution of the issue at hand, the initial policy regarding the right and procedure to be pursued by appellees-insurers in cancelling the policy are as follows:

"This policy may be canceled by the company by mailing to the insured . . . written notice stating when not less than twenty days . . . thereafter such cancellation shall be effective; provided that,

(1) if the named insured fails to discharge when due any of his premium obligations in connection with the payment of premium for this policy or any installment thereof, whether payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit,

(2) or, if this policy has been in effect less than sixty days . . . at the time notice of cancellation is mailed and this is not a renewal policy, . . .

this policy may be canceled by the company by mailing to such insured written notice stating when not less than ten days thereafter such cancellation shall be effective.

. . .

15. CANCELLATION BY COMPANY LIMITED

After this policy has been in effect for sixty days . . . , the company shall not exercise its right to cancel the insurance unless:

(1) the named insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof, whether payable directly to the company or its agent or indirectly under any premium finance plan of extension of credit; or

(2) the driver's license of the named insured or of any other operator who either resides in the same household or customarily operates an automobile insured under this policy has been under suspension of revocation . . . during the policy period:

provided that the company shall have the right to modify any physical damage coverage afforded by this policy . . . by inclusion of a deductible not exceeding $100 . . . "

The original policy also contains the following significant provision:

"Class 1 Means: There is no male operator under 25 years of age, the automobile is not used for business, *other than driving to or from work.*"[3] (Emphasis added)

In Vol. 17, Couch on Insurance, 2d, p. 415, § 67:40, it is provided, in pertinent part, as follows:

"The substitution of one policy for another, whether with the same or a different insurer, is to be distinguished from the mere canceling of a policy. Where the substitute policy is issued by the same insurer, the act of substituting the policy is in effect *the manifestation of mutual consent to the termination of the original policy. . . .*" (Emphasis added)

---

[3]It is clear from the evidence that the first policy was a class 1 policy.

In Vol. 6A, Appleman, Insurance Law and Procedure, p. 605, § 4194, appears the following:

"An insurance policy is in effect canceled when another policy is substituted for it. *But to have such effect, the insured must have consented to the cancellation and the substitution* of the later for the earlier policy. . . . " (Emphasis added)

It is clear from the evidence in this case that appellees-insurers made a unilateral decision to substitute the original policy delivered to appellant by preparing and forwarding to appellant a commercial policy sixty-four days after the initial policy had been in full force and effect. Appellees have characterized this action in two fashions. First, as a substitution and secondly, as an act of cancellation of the first policy. Thus, appellees-insurers' posture in this regard is essentially that substitution and cancellation are indistinguishable. But the difficulty we have in accepting appellees-insurers' position is threefold in scope, aside from rejecting the theory that substitution and cancellation are one and the same. Indeed, the substitution of one policy by another is to be distinguished from the mere cancelling of a policy.

First, the original policy makes no reference to any authority being afforded appellees to make a substitution.

Secondly, the substitution of an existing policy which has the effect of cancelling a prior policy dictates mutual consent on the part of the policyholder and the insurer, unless there is a provision in the policy authorizing unilateral action of substitution on the part of the insurer.

Thirdly, the initial policy delineates and provides expressly the steps that appellees-insurers must pursue in cancelling effectively the policy. For example, the original policy could be canceled by the insurer by mailing to the insured a written notice that cancellation would become effective within twenty days where the named insured failed to discharge his obligation for the payment of the premium; or the policy could be canceled by the company by simply mailing to the insured written notice stating when, not less than ten days after receipt of the notice, such cancellation would

become effective without giving any reason whatsoever for cancelling the policy. In addition, paragraph 15 of the first policy provides that after the policy has been in effect for sixty days, the company shall not exercise its right to cancel the insurance coverage unless the insured fails to pay his premium or the insured's driver's license or any other operator who either resides in the same household with the insured or customarily operates the vehicle of the insured has been suspended or revoked during the policy period.

Inasmuch as it is virtually conceded by appellees-insurers that the policy guidelines for cancellation were not pursued, the conclusion is inescapable that there has been no cancellation within the terms of the policy.

In *Commercial Union Fire Insurance Company v. King*, 108 Ark. 130, we stated:

". . . But this right of cancellation, where a policy has been fairly entered into and has taken effect, *can be exercised only because it is reserved in the policy, and can only be exercised as it is there provided.*" (Emphasis added)

In *The Home Insurance Company v. Hall*, 192 Ark. 283, we made the following observation:

"The cancellation clause in the contract of insurance existing between appellant and appellee gave to the insurer the undoubted right to cancel the policy *by strictly complying with its provisions.*" (Emphasis supplied)

The most that can be said with reference to appellees-insurers' action in executing and forwarding to appellant the commercial policy is that appellees-insurers made an offer to appellant to cancel the family policy by the substitution of the commercial policy which was not accepted by appellant. It is uncontradicted that upon receipt of the commercial policy, appellant immediately communicated with the local representative of appellees and made it clear that he did not need or desire the second policy. In addition, appellant insisted, during his telephonic conference with the representative, that his vehicle was not used for commercial purposes, but, on the contrary, was used as transportation to and from

his place of employment and that this use was authorized under the original policy. In spite of appellant's persistence in rejecting the commercial policy and stating emphatically that his vehicle was not engaged in commercial activities, appellees took no steps either to determine whether appellant desired the commercial policy, or to determine objectively if, in fact, appellant was engaged in commercial activity.[4] Moreover, appellant refused to pay the additional premium billed to him.

Appellees-insurers argue that inasmuch as appellant has acknowledged that he received the commercial policy and retained possession of it and, in addition, instituted action against appellees-insurers on both the original and the second policy, appellant is precluded from asserting lack of "mutual consent" as a defense to the attempted substitution of the commercial policy. Appellees-insurers' argument is not impressive as appellees-insurers recognize, as they must, this argument flies in their face inasmuch as appellant retained the original policy and, moreover, appellees-insurers never requested or demanded surrender of the original policy. The retention of the original policy by appellant supports his argument that he never intended to accept the commercial policy as a substitution.

Relative to appellees-insurers' argument that appellant's action on the original policy and the commercial policy supports its argument is likewise unimpressive inasmuch as the record sustains a conclusion that where an insurer unilaterally attempts to substitute an original policy and the original policy is not effectively canceled, the result is that there are two policies in force: the new policy intended as a substitution and the original policy not effectively canceled.

We conclude that appellees' offer to cancel the original policy by way of substitution of a commercial policy was nugatory inasmuch as appellant rejected the offer.

We find it is not necessary to deal with appellant's

---

[4]The record reflects that sometime after the original policy was delivered to appellant, appellees-insurers concluded from a credit report that appellant's truck was used commercially. It is clear that appellees did not consult appellant directly about the matter.

second contention in view of the position we have taken in dealing with appellant's first contention.

Reversed and remanded.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.