(No. 61642.—

JOEL COPLEY *et al.*, Appellants, v. PEKIN INSURANCE COMPANY, Appellee.

*Opinion filed January 23, 1986.*

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellants.

Vance I. Kepley, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellee.

JUSTICE MILLER delivered the opinion of the court:

On December 15, 1981, fire destroyed an appliance business owned by Joel Copley in Farmer City. Pekin Insurance Company, to which Copley had paid an annual insurance premium in August 1981, denied Copley's claim for the loss. Pekin maintained that, under the doctrine of cancellation by substitution, Copley's policy with Pekin was no longer in effect at the time of the fire. Pekin asserted that Copley had purchased a new insurance policy on his appliance business from Federated Mutual Insurance Company, that he had intended to cancel the Pekin policy, and that he had communicated this intent to a Pekin agent. Copley acknowledged that he had purchased insurance from Federated, and admitted at trial that, at the time of the purchase, he had intended to retain only one insurance policy on his business.

Although Federated Mutual Insurance Company compensated Copley to the limits of his insurance policy with

Federated, Copley's losses exceeded the coverage limits of the policy. Copley and Federated Mutual, as coplaintiffs, sued Pekin Insurance, contending that defendant Pekin, under its policy with Copley, was liable for its *pro rata* share of Copley's loss.

Following a bench trial in the circuit court of Champaign County, the court held that Copley's policy with Pekin Insurance was in effect when the fire occurred. The trial court found that, under the appellate court's decision in *Sizelove v. INA Insurance Co.* (1982), 104 Ill. App. 3d 864, defendant Pekin had failed to establish the requisites of the doctrine of cancellation by substitution. The court awarded plaintiffs damages in the stipulated amount of $38,390.20. The appellate court reversed, holding that, under *Sizelove*, Copley's policy with Pekin Insurance had been cancelled by substitution. (130 Ill. App. 3d 299.) We allowed plaintiff's petition for leave to appeal under Rule 315 (94 Ill. 2d R. 315).

Trial testimony revealed that Joel Copley had owned an appliance sales and service business known as Appliance Alley, located in Farmer City. After buying the store in August 1979, Copley had procured a special multiperil insurance policy through defendant Pekin Insurance Company. The policy provided coverages in the amounts of $25,000 for the building, $30,000 for building contents, and $6,000 for business loss. Copley renewed this policy in 1980. In August 1981, Copley tendered the annual premium for the following year's coverage to John Colvis, an agent for Pekin Insurance and a friend of Copley; approximately a month before paying his premium, however, Copley had indicated to Colvis that he was considering changing insurers.

Emmanuel DeFrates, an agent for Federal Mutual Insurance Company, contacted Joel Copley on a number of occasions prior to September 1981, in an attempt to persuade Copley to replace his existing insurance with a

Federated Mutual policy. Although he had tendered the annual premium to Pekin a month earlier, Copley purchased insurance from Federated Mutual, with coverage beginning on September 28, 1981. The Federated policy listed $25,000 in coverage on Copley's store building and $40,000 in coverage for inventory and other building contents. It is not disputed that Copley's policy with Pekin was in force when the Federated policy became effective.

DeFrates testified at trial that he delivered the Federated policy to Copley's wife, Marsha, at Appliance Alley, on or about November 18, 1981. At that time, Mrs. Copley voiced concern over receiving a refund of the premium the Copleys had paid to Pekin Insurance. DeFrates volunteered to visit the Pekin agency in Farmer City, to inquire about the Copley's refund. Mrs. Copley consented.

After leaving Appliance Alley, DeFrates went to Farmer City Insural, where he met with Robert Bockler, an owner of the insurance agency. Bockler and his father had purchased the agency from John Colvis, effective November 1, 1981, and continued to represent Pekin Insurance. DeFrates asked Bockler to cancel the Pekin policy on Copley's business, and to refund the premium to Copley. At Bockler's request, DeFrates showed Bockler the declaration sheet of the policy which Copley had purchased from Federated Mutual. DeFrates did not, however, give Bockler either Copley's insurance policy with Pekin, or a written release of the Pekin policy signed by Copley. When DeFrates later advised Joel Copley of his visit to the Pekin agency, Copley did not object.

Bockler testified that when DeFrates left Farmer City Insural on November 18, 1981, Bockler did not consider Copley's insurance policy cancelled. Bockler stated that, to cancel Copley's policy with Pekin, someone from Bockler's agency had to contact Joel Copley to obtain ei-

ther a policy release signed by Copley, or a return of the actual policy itself. Betty Yeagle, a Pekin agent who managed Bockler's office, explained that after DeFrates visited Farmer City Insural, she prepared a policy release for Copley to sign. Although she attempted several times to contact Joel Copley, Yeagle was unable to reach Copley to ascertain whether he would sign the policy release or return the actual policy to Pekin.

Joel Copley stated at trial that John Colvis stopped in Appliance Alley on November 18, 1981, after DeFrates had left and Copley had returned to the store. Apparently, Robert Bockler had asked Colvis to speak with Copley. Although Colvis was no longer a Pekin agent and was not employed by Bockler, Colvis voluntarily assisted Bockler after Bockler took over the insurance agency from Colvis on November 1. During his visit on November 18, Colvis attempted to convince Copley not to change insurers, stating that Colvis would have to pay back the sales commissions he had received on the Pekin policy if Copley cancelled the policy. Colvis felt that the Pekin policy offered Copley more protection than the Federated policy. Although he agreed to compare the two policies with Colvis, Copley indicated at trial that neither Colvis nor anyone from Bockler's agency recontacted Copley until after the fire. Copley testified that, after Colvis left Appliance Alley on November 18, Copley was uncertain as to whether he would cancel the Pekin policy.

Copley admitted during the trial that, up to the time of the fire, neither he nor his wife would have objected had they received a refund of their insurance premium from Pekin Insurance. Pekin did not tender a refund to the Copleys, however, until February 16, 1982, two months after the fire and nearly three months after DeFrates visited the Farmer City office of Pekin Insurance. When they received the refund of their premium,

the Copleys did not endorse or negotiate the refund check, but returned the check to Pekin's home office.

Immediately after fire destroyed Appliance Alley on December 15, 1981, Copley informed DeFrates of his claim under the policy with Federated Insurance. That morning, Copley advised DeFrates that he thought the Pekin insurance policy also remained in effect. Copley did not inform the Bockler agency of his claim under the Pekin policy, however, until some three or four weeks after the fire. Federated Mutual honored Copley's claim to the policy limits. Pekin denied liability under its policy. The present litigation ensued.

At the conclusion of trial, the circuit court of Champaign County held that Copley's policy with Pekin Insurance was in effect on the date of the fire. In light of the guidelines announced in *Sizelove v. INA Insurance Co.* (1982), 104 Ill. App. 3d 864, the court ruled that the Pekin policy was not terminated under the doctrine of cancellation by substitution. The court found that although DeFrates had gone to Farmer City Insural on behalf of Copley to cancel the Pekin policy, Bockler, Pekin's agent, did not accept the notification of cancellation in the absence of a surrender of the policy or a signed release. Rather, Bockler had sought to discover, through John Colvis and Betty Yeagle, whether Copley actually desired to cancel the policy. The court also found that Copley waivered in his intention to cancel the Pekin policy. The court held that Pekin was liable to Copley in the stipulated amount of $20,406.43, and liable to Federated Insurance for $17,983.77, the amount of Pekin's *pro rata* share of Copley's loss which had been paid by Federated.

The appellate court reversed the trial court, holding that Copley's policy with Pekin had been cancelled by substitution. The appellate court found that Copley had procured an insurance policy from Federated Mutual with the intent to replace Copley's existing policy with ·

Pekin. The court also held that Copley's intent to cancel his policy with Pekin had been effectively communicated to a Pekin agent. The court ruled, therefore, that the necessary elements of the doctrine of cancellation by substitution had been established under *Sizelove*.

Under the early view of the doctrine of cancellation by substitution, mere procurement of substitute property insurance by an insured, with the intent to replace existing insurance, effected a cancellation of the existing policy. (See, *e.g., Bache v. Great Lakes Insurance Co.* (1929), 151 Wash. 494, 276 P. 549; *Arnfeld v. Guardian Assurance Co.* (1896), 172 Pa. 605, 34 A. 580.) A growing number of jurisdictions, however, hold that the purchase of replacement insurance, even with the intent to cancel existing coverage, does not cancel the existing policy. *Ector v. American Liberty Insurance Co.* (1976), 138 Ga. App. 519, 226 S.E.2d 788; *Northeast Insurance Co. v. Concord General Mutual Insurance Co.* (Me. 1983), 461 A.2d 1056; *Auto-Owners Insurance Co. v. Southern Michigan Mutual Insurance Co.* (1983), 123 Mich. App. 39, 333 N.W.2d 168; *Tyner v. Cherokee Insurance Co.* (1974), 262 S.C. 462, 205 S.E.2d 380.

Defendant contends that the doctrine of cancellation by substitution is a principle of long standing in Illinois, having been adopted by this court in *Larsen v. Thuringa American Insurance Co.* (1904), 208 Ill. 166. *Larsen* held, however, that an existing policy was cancelled only where an insured ratified his agent's procurement of substitute coverage, and surrendered his existing policy to the insurer that issued the insurance policy. This court noted in *Larsen* that, but for the surrender of the actual policy to the original insurer, the original insurer would likely not have been released from liability. See *Songer v. State Farm Fire & Casualty Co.* (1980), 91 Ill. App. 3d 248, 252; *Lee v. Ohio Casualty Insurance Co.* (1978), 58 Ill. App. 3d 1, 4-5.

In *Lee,* the appellate court recognized that the doctrine of cancellation by substitution is now disfavored in many jurisdictions. The court found that a clear trend exists toward dividing liability *pro rata* between insurers if an insured has overlapping insurance coverage on his property. Although the court in *Lee* did not identify the factors necessary for an existing policy to be cancelled by substitution, the court suggested that more than the purchase of new coverage with an intent to cancel the existing policy is required. See also *Continental Casualty Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 402 (mere intent to cancel existing insurance is insufficient to invoke the doctrine).

In *Sizelove v. INA Insurance Co.* (1982), 104 Ill. App. 3d 864, the appellate court set forth its view of the elements required for the doctrine to apply:

"We are persuaded that a party desiring application of the doctrine of cancellation by substitution must show (1) that the insured secured substitute coverage and either acted in such a manner as would disclose to the insurer an intent to cancel the existing coverage or requested cancellation under the terms of the existing policy; or (2) that the insured secured substitute coverage and that mutual consent to cancel the existing coverage existed between the insured and the insurer." (104 Ill. App. 3d 864, 868.)

The court in *Sizelove* found that the plaintiff had purchased new insurance with the intent to replace the existing policies covering his property. Although plaintiff's purchase alone did not cancel his existing coverage, the court found that the defendant had proved that an agreement existed between the plaintiff and the defendant insurer to cancel the existing policies. Under the second prong of its announced standard, the court held that the plaintiff had cancelled the existing coverage by substitution. 104 Ill. App. 3d 864, 868-69.

An insurance policy is a contract between the insurer and the insured party. (*Mammina v. Homeland Insurance Co.* (1939), 371 Ill. 555.) Under general principles of contract law, contracts afford a degree of certainty to the expectations of contracting parties. By permitting the subjective intent of one of the parties to cancel an insurance policy, however, the doctrine of cancellation by substitution removes some of the certainty from insurance contracts. (See *Ector v. American Liberty Insurance Co.* (1976), 138 Ga. App. 519, 226 S.E.2d 788.) The substitution rule appears to have little basis within the law of contracts. Accordingly, we hold that insurance policies, like other contracts, may be cancelled only in accordance with the terms of the insurance contract, or through the mutual consent of the insurer and the insured. The weight of modern authority is in accord. See *Bradshaw v. Motors Insurance Co.* (1978), 263 Ark. 516, 566 S.W.2d 134; *Glens Falls Insurance Co. v. Founders' Insurance Co.* (1962), 209 Cal. App. 2d 157, 25 Cal. Rptr. 753; *Baysdon v. Nationwide Mutual Fire Insurance Co.* (1963), 259 N.C. 181, 130 S.E.2d 311; *Northeast Insurance Co. v. Concord General Mutual Insurance Co.* (Me. 1983), 461 A.2d 1056.

Copley did not cancel his policy with Pekin Insurance pursuant to the terms of the policy. The cancellation provision in the policy stated:

> "CANCELLATION. This policy may be cancelled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective."

Testimony at trial revealed that Copley did not surrender his Pekin policy to Pekin Insurance or to an agent of Pekin. Similarly, Copley did not mail to Pekin written notice of his intention to cancel the policy, nor did he sign a written policy release tendered by any Pekin

agent. Strict compliance with insurance policy provisions governing cancellation is required to effect a valid cancellation under the policy. *Kerr v. Pusateri* (1965), 64 Ill. App. 2d 172.

Generally, contracts can be cancelled by mutual consent of the parties to the contract. (See, *e.g., Volk v. Kendall* (1979), 71 Ill. App. 3d 211.) Likewise, parties to an insurance policy may cancel the policy by mutual consent. See *Murray Bernard Industries, Inc. v. East & West Insurance Co.* (7th Cir. 1950), 185 F.2d 20.

At trial in the present case, the litigants disputed whether there was an effective communication to Pekin Insurance of Copley's intent to cancel his policy with Pekin. We find, however, that unilateral notification of Copley's intent to cancel, even if effectively communicated to Pekin Insurance, would be insufficient to cancel the policy. Cancellation of an insurance policy by mutual consent contemplates more than mere communication of intent by one party to the other. Rather, mutual consent requires an agreement between the insured and the insurer that both parties are to be excused from the insurance contract. See *Bradshaw v. Motors Insurance Corp.* (1978), 263 Ark. 516, 556 S.W.2d 134; *Tyner v. Cherokee Insurance Co.* (1974), 262 S.C. 462, 205 S.E.2d 380.

Our review of the record clearly discloses that there was not an objective manifestation of assent between Copley and Pekin Insurance as to cancellation of Copley's policy with Pekin. Robert Bockler, Pekin's agent, testified at trial that he did not consider the policy cancelled after being informed by DeFrates that Copley wished to cancel the policy. Rather, Bockler stated that he intended to contact Copley to ascertain whether Copley indeed wanted to cancel. The trial court found that Bockler "did not accept" Copley's cancellation through DeFrates. We interpret this finding to mean that Pekin Insurance did not consent or agree to the cancellation of

Copley's insurance policy, which is consistent with the evidence presented at trial.

We conclude that Joel Copley's policy with Pekin Insurance was not cancelled either pursuant to the cancellation provisions of the policy, or by the mutual consent of the parties. We find, therefore, that Copley's policy with Pekin was in effect on December 15, 1981, the date on which fire destroyed Copley's business. Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*