**FIRST DIVISION**
September 24, 2010

No. 1-09-1858

| | | |
|---|---|---|
| MID-CENTURY INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CH 31152 |
| | ) | |
| FOUNDERS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| | ) | |
| (Bryan Berry, Daniella Berry, | ) | |
| Lisa Villarreal, | ) | The Honorable |
| | ) | Rita Mary Novak, |
| Defendants). | ) | Judge Presiding. |

PRESIDING JUSTICE GARCIA delivered the opinion of the court.

The circuit court granted summary judgment to defendant Founders Insurance Company on its counterclaim in a declaratory action filed by plaintiff Mid-Century Insurance Company contesting its duty to indemnify its insured for liability arising from a traffic accident. Each insurance company provided automobile insurance to Bryan and Daniella Berry, who are not parties to this appeal, having signed a stipulation not to contest the declaratory judgment action. The underlying suit arose when Bryan Berry, while driving his Chevrolet Cavalier, collided with Lisa Villarreal, a pedestrian, on February 23, 2005. Prior to the accident, Founders had issued an automobile

insurance policy covering the Berrys' Cavalier. The Berrys also held an insurance policy with Mid-Century, which they believed covered their Dodge Durango; however, Mid-Century issued the policy listing the Cavalier as the covered vehicle. Lisa Villarreal filed a personal injury suit against Bryan, which Founders settled for $100,000. Following the filing of cross-motions for summary judgment, Judge Rita Mary Novak found in favor of Founders on its counterclaim, ruling that Mid-Century owed an equitable contribution of $50,000 for the settlement. We hold that equitable contribution cannot be imposed on Mid-Century because the insurance contract between the Berrys and Mid-Century did not provide coverage for the Cavalier at the time of Bryan's accident. We enter summary judgment in favor of Mid-Century in its declaratory action and reverse.

## BACKGROUND

In an evidence deposition, Daniella Berry testified that prior to 2005, the Berrys insured both their Chevrolet Cavalier and their Dodge Durango with Mid-Century under separate policies. Each policy came up for renewal in January 2005. The Berrys decided to allow the insurance policy on the Cavalier to lapse in February by not paying the premium. On February 7, 2005, the Berrys were issued a binder for an automobile policy by Founders covering the Cavalier. The Founders policy was issued the

following day.  The Berrys intended to continue the coverage with Mid-Century on the Durango.

In its amended complaint for a declaratory judgment, Mid-Century admitted that it cancelled the Berrys' policy on the Cavalier on February 2, 2005, for nonpayment of premiums.  While Mid-Century points to the "undisputed fact" that Daniella's "intent [was] to let the policy for the Chevy Cavalier vehicle operated by her husband, involved in the February 23, 2005[,] motor vehicle occurrence lapse," its sole mention of the Durango policy in its motion for summary judgment is relegated to a footnote: "Daniella and Bryan Berry had a policy of insurance with Mid-Century insuring another vehicle, a Durango[,] which is not at issue in this litigation."

According to Daniella's deposition testimony, sometime in early February 2005, a Mid-Century agent informed the Berrys via a telephone call that due to the agent's error, the policy covering their Durango had lapsed at the same time as the policy covering the Cavalier.  The agent instructed the Berrys to send in a payment of $250 to Mid-Century to reinstate the Durango policy.  After making the payment, the Berrys received an insurance card from Mid-Century, listing the Durango as the covered vehicle.  However, Mid-Century's declaration of insurance, dated February 10, 2005, and titled a "reinstatement,"

3

listed the Cavalier as the insured vehicle, which, though mailed to the Berrys, went unread.

On February 23, 2005, Bryan, while driving the Cavalier, collided with Lisa Villarreal, a pedestrian. Bryan duly reported the accident to Founders. On March 14, 2005, Daniella cancelled the Mid-Century policy, which she believed covered the Durango, to obtain coverage for both vehicles from a single insurance company. Mid-Century's notice of cancellation, issued March 14, 2005, listed the Cavalier as the covered vehicle.

On December 22, 2006, Lisa Villarreal filed suit against Bryan for the personal injuries she received in the accident. In March 2007, Bryan sent Mid-Century a copy of the Villarreal lawsuit involving the Cavalier. In April 2007, Mid-Century sent Bryan a letter denying coverage for the February 23, 2005, accident. On September 27, 2007, Ms. Villarreal settled her lawsuit against Bryan for $100,000, the per-person liability limit under the Founders policy, which Founders satisfied on October 16, 2007. The Mid-Century policy provided the same liability limit.

In April 2008, Mid-Century filed its declaratory action, in which Founders filed its counterclaim for equitable contribution. Judge Novak, relying on the Illinois Supreme Court decision in Copley v. Pekin Insurance Co., 111 Ill. 2d 76, 488 N.E.2d 1004

(1986), ruled that equitable contribution applied and held for Founders.  Mid-Century timely appeals.

ANALYSIS

Summary judgment is warranted when "the pleadings, depositions, and admissions on file, together with any affidavits, when viewed in the light most favorable to the nonmovant, reveal there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Midwest Trust Services, Inc. v. Catholic Health Partners Services, 392 Ill. App. 3d 204, 209, 910 N.E.2d 638 (2009), citing 735 ILCS 5/2-1005(c) (West 2000).  "When parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law."  Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange, 397 Ill. App. 3d 512, 525, 925 N.E.2d 1216 (2010).  Our review of a grant of summary judgment is de novo.  Chicago Hospital, 397 Ill. App. 3d at 525.

While Mid-Century's overall claim is that its policy provided no coverage for the Berrys' Cavalier at the time of the traffic accident, it asserts two narrower issues on appeal: (1) the "automatic termination provision" in its policy voids coverage for the accident; and (2) it received untimely notice of

1-09-1858

the accident.  Founders responds that the circuit court properly entered summary judgment on its counterclaim because the "automatic termination provision" is ambiguous and not self-executing and the circuit court properly rejected the "notice" issue because reasonable notice was given under the circumstances.

Overlapping Coverage Question

Setting aside for the moment the precise issues raised by the appellant Mid-Century, we find it necessary to first address on our de novo review whether this case falls within the holding of our supreme court's decision in Copley v. Pekin Insurance Co., 111 Ill. 2d 76, 488 N.E.2d 1004 (1986), which concerned policies issued by two different insurance companies covering the same property owned by the insured.  The analysis under Copley raises a threshold question: did the Mid-Century policy provide coverage for the Durango or the Cavalier?  Only if the Mid-Century policy, reinstated on February 10, 2005, provided coverage for the Cavalier would the rule in Copley apply because the Berrys' Cavalier would then be covered by both the Mid-Century and Founders policies.  See Copley, 111 Ill. 2d. at 84 ("dividing liability pro rata between insurers [when] an insured has overlapping insurance coverage on his property").

Although the parties did not address this threshold issue of

6

coverage in the trial court and both parties proceed before us under the assumption that the two policies provided overlapping insurance coverage, it is within our discretion to address this possibly dispositive issue. See 155 Ill. 2d R. 366(a)(5) (a reviewing court may, in its discretion, "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief"). In an effort to refine the preliminary issue before us, prior to oral argument, we directed the parties to file supplemental briefs on whether there was a meeting of the minds between the Berrys and Mid-Century to reinstate the lapsed insurance contract. The supplemental briefs, however, fail to discuss the position the Berrys would likely have taken on appeal. See People v. Givens, 237 Ill. 2d 311, 324, __ N.E.2d __ (2010) (" 'Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief' "), quoting Greenlaw v. United States, 554 U.S. 237, __, 171 L. Ed. 2d 399, 408, 128 S. Ct. 2559, 2564 (2008).

While generally issues not raised at the circuit court level are considered waived, "a reviewing court does not lack authority to address unbriefed issues and may do so *** when a clear and obvious error exists in the trial court proceedings." Givens,

1-09-1858

237 Ill. 2d at 325. " '[U]nder Rule 366 [citation], a reviewing court may, in the exercise of its responsibility for a just result, ignore consideration of waiver and decide a case on grounds not properly raised or not raised at all by the parties.' " City of Wyoming v. Liquor Control Comm'n, 48 Ill. App. 3d 404, 407-08, 362 N.E.2d 1080 (1977), quoting Occidental Chemical Co. v. Agri Profit Systems, Inc., 37 Ill. App. 3d 599, 603, 346 N.E.2d 485 (1975). In choosing to address an unbriefed issue, we recognize that as a reviewing court, we must refrain from doing so if the effect would be to transform us from jurist to advocate. Givens, 237 Ill. 2d at 325, citing People v. Rodriguez, 336 Ill. App. 3d 1, 14, 782 N.E.2d 718 (2002). That is not our intention here.

Instead, our analysis is aimed at deciding whether equitable contribution applies under the circumstances in this case. We believe the passive role of the Berrys in the litigation below skewed the circuit court's analysis from determining the intention behind the "reinstatement" policy issued by Mid-Century on February 10, 2005, to one centering on the counterclaim filed by Founders.

We begin our analysis by addressing whether the insurance contract entered into between the Berrys and Mid-Century provided coverage for the Cavalier, as Mid-Century and Founders presume,

8

or the Durango, as the Berrys and the agent for Mid-Century agreed in seeking and making the premium payment, in order to provide "for a just result and for the maintenance of a sound and uniform body of precedent." Hux v. Raben, 38 Ill. 2d 223, 225, 230 N.E.2d 831 (1967). The issue of coverage is compelled by the unchallenged testimony of Daniella that it was always the Berrys' intention in February 2005 to continue coverage with Mid-Century for the Durango only and the statement attributed to the Mid-Century agent that upon the receipt of the Berrys' payment of $250, the lapsed policy for the Durango would be reinstated.

"An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." Hobbs v. Hartford Insurance Co. of the Midwest, 214 Ill. 2d 11, 17, 823 N.E.2d 561 (2005). It is the intent of the parties to a contract that determines its scope. Hobbs, 214 Ill. 2d at 17. "To form a valid contract between two parties, there must be mutual assent by the contracting parties on the essential terms and conditions of the subject about which they are contracting." Reese v. Forsythe Mergers Group, Inc., 288 Ill. App. 3d 972, 979, 682 N.E.2d 208 (1997). "Where the facts are not in dispute, *** the existence of a contract is a question of law, which the trial court may decide on a motion for summary judgment and which this

court may independently review." Reese, 288 Ill. App. 3d at 979.

The undisputed facts of this case compel us to consider whether a mutual mistake of fact occurred between the Berrys and Mid-Century that undermines the presumption of the two insurance companies before us that the reinstated insurance policy by Mid-Century afforded coverage to the Cavalier, rather than the Durango. If a mutual mistake of fact occurred regarding the coverage provided by the insurance contract, the contract will be interpreted consistent with the intentions of the parties. Beddow v. Hicks, 303 Ill. App. 247, 25 N.E.2d 93 (1940).

A mutual mistake of fact occurs when the parties reach a good-faith agreement, but that agreement "is not expressed in the written reduction of the agreement" due to error. Beynon Building Corp. v. National Guardian Life Insurance Co., 118 Ill. App. 3d 754, 760, 455 N.E.2d 246 (1983). "Thus, the mistake must have existed at the time of the execution of the instrument, must have been mutual and common to all parties, and must have been such that the parties intended to say one thing but by the written instrument expressed another." Beynon, 118 Ill. App. 3d at 760.

There is no dispute that the Berrys sought to continue coverage for only the Durango when both of their automobile policies with Mid-Century were up for renewal in January 2005.

10

The Berrys had an existing policy providing coverage for the Durango and only needed to keep the premium current to continue the coverage. The agent for Mid-Century that called the Berrys regarding the lapse of their policy expressed the intention to reinstate the Durango policy upon receipt of the premium payment. Consistent with this shared intention between the Berrys and Mid-Century that the reinstated policy would provide coverage for the Durango, the Berrys received an insurance card from Mid-Century that identified the Durango as the covered vehicle. The mistake shared by the contracting parties is that the "reinstatement" policy identified the Cavalier, rather than the Durango, as the covered vehicle.[1]

If the Berrys were before us seeking to reform the Mid-Century policy to provide coverage for the Durango, their

[1] In fact, in its motion for summary judgment, Mid-Century argued "it is undisputed that the Berrys chose to cancel their policy with Mid Century insuring the vehicle Bryan Berry was operating at the time of the February 23, 2005, motor vehicle occurrence." Yet, Mid-Century failed to advance this position to its logical conclusion that if the policy covering the Cavalier was no longer in effect at the time of the accident, then the policy that was reinstated covered the Durango, which Daniella canceled in March 2005.

contention would appear to be on solid legal ground. "Where the contracting parties to a policy of insurance make a mistake and the policy fails to express the real contract between them, and provisions other than those intended are inserted or omitted, equity has the right to grant relief by reformation of the contract." Stoltz v. National Indemnity Co. of Omaha, Nebraska, 345 Ill. App. 495, 500-01, 104 N.E.2d 320 (1952), citing Beddow, 303 Ill. App. at 247. In Stoltz, the insured, in an action to reform the insurance policy, contended that both parties to the insurance contract understood a policy would issue to cover both the plaintiff's tractor and the trailer. The plaintiff paid an insurance premium based on the value of both the tractor and trailer. Yet, because of a mistake on the part of the defendant insurance company's agent, the issued policy omitted coverage for the trailer. Stoltz, 345 Ill. App. at 500. Following a trial, the trial court reformed the insurance policy, consistent with the clear intent of the parties, to reflect the terms as originally agreed upon by the parties, that is, to provide coverage for the trailer as well. We affirmed. Stoltz, 345 Ill. App. at 501.

The Berrys, as the insured under the Mid-Century policy, however, are not before us, having stipulated to accept the outcome in the declaratory action. Consequently, we do not have

12

1-09-1858

the benefit of all the parties to the Mid-Century policy " 'to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' " Givens, 237 Ill. 2d at 323, quoting Greenlaw, 554 U.S. at __, 171 L. Ed. 2d at 408, 128 S. Ct. at 2564. In this case, the "principle of party presentation" does not apply with full force. Givens, 237 Ill. 2d at 323.

With the Berrys absent, Founders seeks to stand in the shoes of the Berrys to enforce an insurance policy that, according to its written terms, covered the Berrys' Cavalier at the time of Bryan's accident. However, there can be no real dispute that the actual agreement between the Berrys and Mid-Century was for coverage of the Durango. It is also clear that the Berrys never intended for the Cavalier to be covered under two different insurance policies providing the same liability protection. Their clear intention in February 2005 was to cover each vehicle under different policies from separate insurance companies. Founders, while claiming to stand in the shoes of the Berrys, does not provide us with any reason that the Berrys, contrary to their expressed intentions, would elect to have two automobile insurance policies from two separate companies providing the same liability limit of $100,000 per person. With identical policies from two different insurance companies, the Berrys would be

13

paying double premiums without receiving any additional benefit.

It seems clear that if the Berrys were before us, they would likely take the same position they took before the circuit court: the Mid-Century "reinstatement" policy was meant to provide liability coverage for the Durango. Under slightly different facts, the Berrys would likely assert a claim that the Mid-Century policy should be reformed based upon their clear intent at the time of the reinstatement of the Mid-Century policy. If the two policies provided the same coverage for the Cavalier, it would necessarily mean that the Durango was not covered by an insurance policy during the time the Cavalier was covered by Mid-Century and Founders. Had the accident occurred while Bryan had been driving the Durango rather than the Cavalier, the Berrys, rather than Founders, would be involved in this case, arguing for reformation of the insurance contract consistent with the intentions of the parties at the time the policy was reinstated, i.e., arguing for coverage of the Durango to allow the Berrys to seek indemnification under the policiy's liability protection. Stolz, 345 Ill. App. at 501. We are unpersuaded that the mistake by Mid-Century to list the covered vehicle as the Cavalier rather than the Durango should give rise to a right in Founders to stand in the shoes of the Berrys to seek enforcement of the Mid-Century policy as written.

14

1-09-1858

The record before us is barren of any evidence, other than the written policy itself, that the Mid-Century policy was meant to provide coverage for the Cavalier. The Berrys provided no such testimony and Mid-Century does not claim it understood the Berrys, at the time they paid to reinstate the lapsed policy, sought such coverage. The facts are not in dispute: the policy with Mid-Century was reinstated on February 10, 2005, to continue coverage for the Berrys' Durango. The insurance policy issued by Mid-Century was not meant to provide coverage for the Cavalier; rather, we conclude that a mutual mistake of fact as to the vehicle covered occurred between Mid-Century and the Berrys, the only parties to the insurance contract at the center of this litigation. The evidence is uncontested that neither the Berrys nor Mid-Century intended the Cavalier to be covered by the Mid-Century policy. Though the issue on Mid-Century's duty to defend and indemnify the Berrys had the Durango been involved in the accident is not raised by the underlying lawsuit, that possibility informs us on the real issue before us: whether the supreme court's Copley decision triggers equitable contribution under the circumstances present in this case.

In Copley, the insured, Copley, purchased a new fire insurance policy over certain real property, but, at the time, did not cancel his existing one. The two policies had different

15

coverage limits. Following a fire while both policies were in effect, the insurance company with the preexisting policy, Pekin, denied Copley's claim for losses based on the common law doctrine of cancellation by substitution. Copley, 111 Ill. 2d at 78. Copley and the insurance company that issued the new policy, Federated, sued Pekin, claiming Pekin was liable for its "pro rata share of Copley's loss" that Federated paid and for the additional loss Copley sustained under the greater coverage provided by the Pekin policy. Copley, 111 Ill. 2d at 79. Pekin maintained that the doctrine of cancellation by substitution operated to cancel its policy, leaving only the Federated fire policy. It was undisputed that Copley intended to carry only one policy and had simply failed to act to cancel the Pekin policy.

Following a bench trial, the trial court held Pekin's policy was in effect at the time of the fire. Pekin "had failed to establish the requisites of the doctrine of cancellation by substitution." Copley, 111 Ill. 2d at 79. An agent for Pekin testified that "either a policy release signed by Copley or a return of the actual policy itself" had to occur to effect a cancellation. Copley, 111 Ill. 2d at 80-81. No portion of the annual premium paid by the insured was returned prior to the fire. Copley, 111 Ill. 2d at 81. When Federated processed Copley's claim, it reminded him that the Pekin policy might still

16

be in effect. Copley, 111 Ill. 2d at 82. Copley filed a claim with Pekin three to four weeks later, which Pekin denied. Copley returned the refund check from Pekin for the unused portion of the annual premium he paid prior to the fire. Copley, 111 Ill. 2d at 81-82.

The appellate court took a contrary view regarding Pekin's satisfaction of the doctrine of cancellation by substitution. Copley, 111 Ill. 2d at 82. In reversing the appellate court, our supreme court noted that an earlier appellate court decision had written "that the doctrine of cancellation by substitution is now disfavored in many jurisdictions. The [appellate] court found that a clear trend exists toward dividing liability pro rata between insurers if an insured has overlapping insurance coverage on his property." Copley, 111 Ill. 2d at 84, citing Lee v. Ohio Casualty Insurance Co., 58 Ill. App. 3d 1, 5, 373 N.E.2d 1027 (1978).

Ultimately, the supreme court applied the general principles of contract law to reject Pekin's position that the doctrine of cancellation by substitution can be invoked by "the subjective intent of one of the parties." Copley, 111 Ill. 2d at 85. "Accordingly, we hold that insurance policies, like other contracts, may be cancelled only in accordance with the terms of the insurance contract, or through the mutual consent of the

1-09-1858

insurer and the insured."  Copley, 111 Ill. 2d at 85.

Mid-Century's Cancellation Clause

For support of its first issue on appeal, Mid-Century relies on the supreme court's reference in Copley to a cancellation "in accordance with the terms of the insurance contract" (Copley, 111 Ill. 2d at 85), to claim that the cancellation clause in its policy "voids coverage for the accident."

Although Mid-Century seeks to invoke the cancellation clause of its policy, the cancellation clause has no application here because, as we determined, the policy should have issued to provide coverage for the Durango and, therefore, the cancellation clause was never triggered by "other insurance *** obtained on your insured car."  The cancellation clause applied only if coverage applied to the Cavalier, but the Berrys never sought such coverage under the "reinstatement" policy issued by Mid-Century.  Because the cancellation clause was never invoked, we need not resolve the validity of the cancellation clause itself.[2]

We do observe, however, that a shared intent of the

_____

[2] Founders challenges as ambiguous the cancellation clause of the Mid-Century policy under the circumstances present here because the Founders policy came into existence prior to the reinstatement of the Mid-Century policy.

18

contracting parties evidenced by an insurance contract's cancellation clause does not necessarily transfer to the moment when "other insurance is obtained." If we were to apply the cancellation clause literally based on the purchase of the Founders policy, a strong argument could be made that Mid-Century nullified the cancellation by accepting the premium payment by the Berrys in February 2005, even though it was unaware of the Founders policy. See Librizzi v. State Farm Fire & Casualty Co., 236 Ill. App. 3d 582, 603 N.E.2d 821 (1992) (termination of policy due to failure to pay renewal premium was not cancellation and was not subject to cancellation provisions of policy). Of course, just as Mid-Century was unaware of the Founders policy, the Berrys had no actual knowledge that Mid-Century had not complied with their wishes to reinstate the coverage for the Durango. Mid-Century's mistaken reinstatement of the coverage for the Cavalier is the basis for its claim that the cancellation clause regarding other insurance coverage for the "same vehicle" was triggered. We see no reason to wade through the thicket of issues the application of the cancellation clause might entail under the facts before us. We simply note that Mid-Century seeks to benefit from a mistake of its own making in asserting that its cancellation clause was triggered only because Mid-Century failed to comply with the wishes of its insured. See Pittway Corp. v.

19

1-09-1858

American Motorists Insurance Co., 56 Ill. App. 3d 338, 346-47, 370 N.E.2d 1271 (1977) (an insurance agent must act with competence and skill when procuring an insurance policy according to the wishes of the client).

It is also fair to say that the requisite mutual consent, required by our supreme court in Copley to cancel the policy as written to provide coverage of the Cavalier, is doubtful. "[M]utual consent requires an agreement between the insured and the insurer that both parties are to be excused from the insurance contract." Copley, 111 Ill. 2d at 86. Under Copley, it would seem the cancellation clause of a policy requiring mutual assent cannot be triggered based on events unbeknownst to the parties to the contract as the facts here demonstrate. "Strict compliance with insurance policy provisions governing cancellation is required to effect a valid cancellation under the policy." Copley, 111 Ill. 2d at 86.

To be clear, we find the cancellation clause does not apply here because the "reinstatement" policy of Mid-Century was not meant to provide coverage for the Berrys' Cavalier. We conclude that equitable contribution does not apply under the facts of this case because, unlike in Copley, the two policies at issue did not cover the same property owned by the Berrys. Copley, 111 Ill. 2d at 86. Based on the clear intention of the parties to

20

the insurance contract, the Mid-Century "reinstatement" policy, dated February 10, 2005, following the Berrys' payment of the requested premium, should have provided coverage for the Durango, not the Cavalier. Consequently, there is no basis to apportion with Mid-Century, the liability that Founders incurred from the traffic accident involving the Cavalier because the insurance coverage provided by the two policies was not overlapping. Copley, 111 Ill. 2d at 86. Because we find in favor of Mid-Century on its overall claim that the reinstated policy in February 2005 provided no coverage for the Cavalier, Mid-Century's second issue for relief is rendered moot. See Condon v. American Telephone & Telegraph Co., 136 Ill. 2d 95, 100-01, 554 N.E.2d 206 (1990) (second challenge under statute was rendered moot when first claim was accepted).

                          CONCLUSION

We reverse the circuit court's summary judgment order finding in favor of Founders on its counterclaim that Mid-Century pay an equitable contribution of $50,000 in the settlement of the underlying suit where the two policies did not provide liability coverage for the same property. Instead, we grant Mid-Century's motion for summary judgment.

Reversed.

1-09-1858

MCBRIDE and R. GORDON, JJ., concur.

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

**MID-CENTURY INSURANCE COMPANY,**

      **Plaintiff-Appellant,**

v.

**FOUNDERS INSURANCE COMPANY,**

      **Defendant-Appellee,**


**(Bryan Berry, Daniella Berry, Lisa Villarreal,**

      **Defendants).**

### No. 1-09-1858

**Appellate Court of Illinois**

**First District, Sixth Division**

**Filed: September 24, 2010**


**PRESIDING JUSTICE GARCIA delivered the opinion of the court.**

**MCBRIDE and R. GORDON, JJ., concur.**


**Appeal from the Circuit Court of Cook County**

**Honorable Rita Mary Novak, Judge Presiding**


| For PLAINTIFF-APPELLANT | Lewis Brisbois Bisgaard & Smith LLP |
| | Danny L. Worker |
| | Lisa M. Taylor |

1-09-1858

Jonathan L. Schwartz

Siobhan M. Murphy

550 West Adams Street, Suite 300

Chicago, IL 60661

For DEFENDANT-
APPELLEE

The Law Office of Shari Shelmadine

Shari Shelmadine

53 West Jackson Blvd., Suite 1209

Chicago, IL 60604